STATE of Delaware, Plaintiff,

v.

Charles M. COHEN, Defendant.

STATE of Delaware, Plaintiff,

v.

James Allen RED DOG, Defendant.

STATE of Delaware, Plaintiff,

v.

Robert Allen GATTIS, Defendant.

STATE of Delaware, Plaintiff,

v.

Joseph SHIELDS, Jr., Defendant.

STATE of Delaware, Plaintiff,

v.

Jermaine WRIGHT; Lorinzo Dixon, Defendants.

STATE of Delaware, Plaintiff,

v.

Meri–Ya M. BAKER; Bryon S. Dickerson, Defendants.

STATE of Delaware, Plaintiff,

v.

Henry L. De JESUS, Defendant.

Supreme Court of Delaware.

Submitted: Feb. 11, 1992.
Decided: Feb. 14, 1992.

---

On Certification of Questions of Law from the Superior Court of the State of Delaware in and for New Castle County. QUESTIONS ANSWERED.

Richard E. Fairbanks, Jr. (argued), and Loren C. Meyers, Dept. of Justice, Wilmington, for plaintiff.

Nancy Jane Perillo (argued), J. Dallas Winslow, Edward C. Pankowski, Jr., John H. McDonald, Richard M. Baumeister, Raymond J. Otlowski, Brian J. Bartley (argued), and Bernard J. O'Donnell, Office of Public Defender, Wilmington, Jeffrey K. Bartels (argued), and John Willard, Bartels and Willard, Wilmington, for defendants.

Bruce M. Stargatt and Bruce L. Silverstein, Young, Conaway, Stargatt & Taylor, Wilmington, for amicus curiae, ACLU, in support of defendants' arguments.

Before CHRISTIE, C.J., HORSEY, MOORE, WALSH and HOLLAND, JJ., constituting the Court en banc.

MOORE, Justice.

Defendants await trial for first-degree murder, and the State intends to seek the death penalty as to each of them. Issues concerning the construction and constitutionality of Delaware's death penalty statute, as modified by 68 Del.Laws Ch. 181 (codified at 11 *Del.C.* § 4209) (the "new law"),[1] are presented in these questions certified to us by the Superior Court under Supreme Court Rule 41. With the exception of the charges against Henry L. De Jesus, all of the alleged murders occurred before the new law became effective. The defendants raise numerous constitutional objections to the new law and its application to them. We find the new law valid in all respects and fully applicable to all the defendants. The certified questions are answered in accordance with these conclusions.

I.

The following questions of law have been certified by the Superior Court and accepted by us:

1. Does the new law mandate imposition of a death penalty, if the sentencing court makes its findings required under 11 *Del.C.* § 4209(d)(1)(a) and (b) against the defendant?

2. If the answer to certified question 1 is "yes", does the new law violate the Eighth Amendment to the United States Constitution and/or the Cruel Punishments' Clause of Article I, Section 11 of the Delaware Constitution?

3. If the answer to certified question 1 is "yes", does the new law violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution, the Eighth Amendment to the United States Constitution, the Due Process Clause of Article I, Section 7 of the Delaware Constitution and/or the Cruel Punishments' Clause of Article I, Section 11 of the Dela-

ware Constitution, in that a death sentence is mandated without a finding that the aggravating circumstances outweigh the mitigating circumstances beyond a reasonable doubt?

4. Does the new law, by designating the court as the sentencing authority in capital cases here, violate the defendant's rights under the Sixth and Fourteenth Amendments to the United States Constitution and/or Article I, Section 4, and Article IV, Section 19 of the Delaware Constitution and related Delaware statutory and court rule provisions, to a trial by jury on the issue of punishment?

5. Should the new law be found constitutionally infirm under any of the grounds set forth in certified questions 2, 3 or 4, what law applies to the sentencing of defendants convicted of murder first degree for offenses committed prior to the effective date of those provisions?

6. Should the new law be found constitutionally infirm under any of the grounds set forth in certified questions 2, 3 or 4, what law applies to the sentencing of defendants convicted of murder first degree for offenses committed after the effective date of those provisions?

7. Should the revised provisions of the new law be found constitutionally or otherwise infirm in any limited respect, are those provisions severable?

8. Is the application of the new law to all defendants tried or sentenced after its effective date violative of the *Ex Post Facto* Clause of Article I, Section 10 of the United States Constitution or any other provision of the United States Constitution?

9. Is the application of the new law to all defendants tried or sentenced after its effective date violative of the Due Process Clause of Article I, Section 7 of the Delaware Constitution with respect to the determination of punishment or any other provision of the Delaware Constitution?

10. Since the new law provides that the jury make a recommendation only, does the jury have to be "death qualified"?

1. The complete text of the modifications is re-    produced in Appendix I.

On November 4, 1991, the Governor signed Senate Substitute 1 for Senate Bill 79 ("Bill") which had been passed by the General Assembly on October 24, 1991. The Bill revised Delaware's death penalty statute in several respects. Most significantly, the new law changed the roles of the judge and jury in the sentencing phase of a capital murder trial. Thus, the jury now functions only in an advisory capacity. The judge, after taking the jury's recommendation into consideration, has the ultimate responsibility for determining whether the defendant will be sentenced to life imprisonment or death.

The new law was enacted under a suspension of legislative rules on the day it was introduced. There was little debate in either house of the General Assembly. The catalyst for these rapid developments was the imposition of life sentences on defendants by a New Castle County jury in a much publicized capital murder case involving the execution style murders of two armored car guards. Similar legislation, however, had been pending in the State Senate since March 26, 1991.

We accepted certification of the foregoing questions by the Superior Court to resolve important issues regarding the construction and constitutionality of the new law. Pending these proceedings, the President Judge of the Superior Court has stayed all capital murder trials.

## II.

As to Certified Question No. 1:

■ The new law mandates imposition of the death penalty if the sentencing court finds: 1) at least one statutory aggravating circumstance; and 2) the aggravating circumstances outweigh the mitigating circumstances. 11 *Del.C.* § 4209(d). There is no ambiguity in that provision. The clear language of the new law provides that "[a] sentence of death *shall be imposed* ... if the Court finds" that aggravating circumstances outweigh mitigating circumstances. *Id.* (emphasis added).

Defendants contend that the new law should be interpreted so as to include a separate "totality of the circumstances" analysis prior to the imposition of the death penalty. Thus, the new law would only mandate a death sentence if, under the totality of the circumstances, the court finds that death is the appropriate penalty. We reject that interpretation for the following reasons.

First, the defendants' totality of the circumstances analysis is encompassed within the weighing process required by the new law. Prior to imposing sentence the trial court is required to weigh the aggravating factors against those in mitigation. 11 *Del.C.* § 4209(d)(1)(b). The defendants argue that the weighing of aggravating and mitigating circumstances is simply a mechanical process devoid of judgment. That contention is meritless.

In interpreting the Florida death penalty statute upon which the new law is patterned, the Florida Supreme Court noted that:

> The procedure to be followed by the trial judges and juries is not a mere counting process of X number of aggravating circumstances and Y number of mitigating circumstances, but rather a reasoned judgment as to what factual situations require the imposition of death and which can be satisfied by life imprisonment in light of the totality of the circumstances present.

*State v. Dixon,* Fla.Supr., 283 So.2d 1, 10 (1973), *cert. denied,* 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974); *see also Commonwealth v. Holland,* 518 Pa. 405, 419, 543 A.2d 1068, 1075 (1988) (the weighing of aggravating and mitigating circumstances involves a "qualitative" rather than "quantitative" consideration of the circumstances to determine the appropriate punishment). We cannot conceive of a relevant factor in a totality of the circumstances analysis which would not also be weighed as a mitigating or aggravating factor under the new law. Thus, any distinct totality of the circumstances analysis would be redundant.

Second, the new law clearly provides that a death sentence shall be imposed if the trial court finds that aggravating circum-

stances outweigh mitigating circumstances. 11 *Del.C.* § 4209(d). While the new law does not explicitly provide for a separate totality of the circumstances analysis, it is subsumed in the weighing process. Beyond that observation, it is not our province to impose a wholly separate analysis contrary to the statute's clear and unambiguous language.[2] *See Spielberg v. State,* Del.Supr., 558 A.2d 291, 293 (1989) ("Where the intent of the legislature is clearly reflected by the unambiguous language in the statute, the language itself controls").

Accordingly, Certified Question 1 is answered in the affirmative.

### III.

As to Certified Question No. 2:

■ The new law as drafted by the legislature and interpreted by this Court does not violate the Eighth Amendment of the United States Constitution or the Cruel Punishments' Clause of the Delaware Constitution.

The mandatory aspect of the new law has previously been upheld by the United States Supreme Court. *See Walton v. Arizona,* 497 U.S. 639, 110 S.Ct. 3047, 3056, 111 L.Ed.2d 511 (1990); *Blystone v. Pennsylvania,* 494 U.S. 299, 306–07, 110 S.Ct. 1078, 1083, 108 L.Ed.2d 255 (1990); *Proffitt v. Florida,* 428 U.S. 242, 260–61, 96 S.Ct. 2960, 2970, 49 L.Ed.2d 913 (1976) (White, J., concurring) (upholding as constitutional a Florida statute under which "the sentencing judge is *required* to impose the death penalty on all first-degree murderers as to whom the statutory aggravating factors outweigh the mitigating factors") (emphasis in original). In addition, the United States Supreme Court has recently upheld

a jury instruction which stated that "[i]f you conclude that the aggravating circumstances outweigh the mitigating circumstances, you *shall impose* a sentence of death." *Boyde v. California,* 494 U.S. 370, 374, 110 S.Ct. 1190, 1195, 108 L.Ed.2d 316 (1990) (emphasis in original). In *Boyde,* the Supreme Court specifically noted that there is no "constitutional requirement of unfettered sentencing discretion in the jury, and States are free to structure and shape consideration of mitigating evidence 'in an effort to achieve a more rational and equitable administration of the death penalty.'" *Id.* at 377, 110 S.Ct. at 1196 (quoting *Franklin v. Lynaugh,* 487 U.S. 164, 181, 108 S.Ct. 2320, 2331, 101 L.Ed.2d 155 (1988) (plurality opinion)).

With respect to the Delaware Constitution, this Court has previously upheld a death penalty statute which mandated a death sentence upon conviction for certain crimes. *See State v. Sheppard,* Del.Supr., 331 A.2d 142, 143–44 (1974); *State v. Dickerson,* Del.Supr., 298 A.2d 761, 767–68 (1972).[3] In light of those decisions, it can hardly be argued that the Delaware Constitution historically accords defendants greater protection against punishment than does the United States Constitution. Having concluded that the mandatory aspects of the new law do not violate the United States Constitution, it follows that such provisions do not violate the Delaware Constitution.

Accordingly, Certified Question 2 is answered in the negative.

### IV.

As to Certified Question 3:

■ Neither the United States Constitution nor the Delaware Constitution requires

---

2. Although they do not raise a specific constitutional challenge, defendants argue that this Court has an obligation to interpret the new law so as to pass constitutional muster. However, there is no question that the mandatory aspect of the new law is constitutional. *See Walton v. Arizona,* 497 U.S. 639, 110 S.Ct. 3047, 3056, 111 L.Ed.2d 511 (1990); *Boyde v. California,* 494 S.Ct. 370, 374, 110 S.Ct. 1190, 1195, 108 L.Ed.2d 316 (1990). Thus, the issue before this Court is simply one of statutory construction.

3. Both *Dickerson* and *Sheppard* were superseded by a United States Supreme Court decision holding such death penalty statutes unconstitutional. *See State v. Spence,* Del.Supr., 367 A.2d 983, 984–88 (1976) (citing *Woodson v. North Carolina,* 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976)). However, the fact remains that the statute was invalidated under the United States Constitution not the Delaware Constitution.

the sentencing court to find that the aggravating circumstances outweigh the mitigating circumstances *beyond a reasonable doubt* before a death sentence is imposed.

The new law requires that a sentence of death shall be imposed if the court finds, *by a preponderance of the evidence,* that the aggravating factors outweigh the mitigating factors. 11 *Del.C.* § 4209(d)(1)(b). Under Delaware law, the preponderance of the evidence is simply a weighing standard where "[t]he side on which the greater weight of the evidence is found is the side on which the preponderance of the evidence exists." *Reynolds v. Reynolds,* Del.Supr., 237 A.2d 708, 711 (1967). Thus, the inclusion of a preponderance of the evidence standard does not alter the actual requirement that the aggravating circumstances simply outweigh the mitigating circumstances. As incorporated into the new law, we do not perceive the preponderance of the evidence standard to be different from the former law which required the jury to weigh any mitigating factors against the aggravating factors. *See* former 11 *Del.C.* § 4209(c)(4) and (d)(1)(b).

Defendants contend that if a particularized standard of proof is included in the new law, that standard must be "beyond a reasonable doubt." That position is without merit. It confuses the requirement, found in both the old and new laws, that each aggravating factor be proven beyond a reasonable doubt followed by the weighing of such factors against those in mitigation. The two processes are different, but compatible, under both the United States and Delaware Constitutions.

In *Ford v. Strickland,* 696 F.2d 804 (11th Cir.1983), *cert. denied,* 464 U.S. 865, 104 S.Ct. 201, 78 L.Ed.2d 176 (1983), the court held that "[w]hile the existence of an aggravating or mitigating circumstance is a fact susceptible to proof under a reasonable doubt or preponderance standard, the relative *weight* is not. The process of weighing circumstances is a matter for

judge and jury, and, unlike facts, is not susceptible to proof by either party." *Id.* at 818 (citations omitted) (emphasis in original). The "Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of *every fact necessary to constitute the crime* with which he is charged." *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970) (emphasis added). The aggravating and mitigating circumstances adduced at the sentencing phase of a capital trial do not serve as a basis for conviction, but relate solely to the issue of punishment. The United States Supreme Court has held constitutional, on its face, Florida's capital sentencing procedure which includes a weighing of aggravating and mitigating circumstances similar to that contained in the new law.[4] *Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976). Moreover, the United States Supreme Court has recently rejected a constitutional challenge to the use of a preponderance of the evidence standard during the penalty phase of a capital trial. *Walton v. Arizona,* 110 S.Ct. at 3056 (citing *Mills v. Maryland,* 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988)).

Accordingly, Certified Question 3 is answered in the negative.

## V.

As to Certified Question No. 4:

■ Designation of the trial judge as the sentencing authority does not violate the right to a jury trial under either the United States or the Delaware Constitutions. The defendants concede that there is no federal right to the determination of punishment by a jury in a capital case. *See Hildwin v. Florida,* 490 U.S. 638, 639–41, 109 S.Ct. 2055, 2056, 104 L.Ed.2d 728 (1989); *Spaziano v. Florida,* 468 U.S. 447, 464–65, 104 S.Ct. 3154, 3164–65, 82 L.Ed.2d 340 (1984). Thus, the only question is whether the Delaware Constitution guarantees a defendant that right. Clearly, it does not.

---

4. The new law, patterned after the Florida statute, was upheld by the Supreme Court. Before a death sentence could be imposed, the Florida statute required that there be "insufficient mitigating circumstances to *outweigh* the aggravating circumstances." Fla.Stat.Ann. § 921.141 (emphasis added).

It is undisputed that the right to a jury trial guaranteed by Article I, Sections 4 and 7 of the Delaware Constitution differs from the right to a jury trial guaranteed by the Federal Constitution. *Claudio v. State*, Del.Supr., 585 A.2d 1278, 1289–90 (1991). "[A]ny analysis of the right to a trial by jury, as it is guaranteed by the Delaware Constitution, requires an examination of the common law." *Id.* at 1298. Defendants recognize that under common law the accused had a right to a jury trial for murder, and that a guilty verdict resulted in a death sentence. Thus, it is argued that at common law a defendant was entitled to have a jury determine whether death was the proper punishment. That argument is devoid of legal, factual and historical support.

The right to trial by jury in Delaware is rooted in the common law. By Article 25 of the Delaware Constitution of 1776, the "common law of England, ... shall remain in force, unless ... altered by a future law of the Legislature; [except] such parts ... as are repugnant to the rights and privileges contained in this Constitution and the Declaration of Rights, etc. agreed to by this convention." Significantly, Section 13 of the Declaration of Rights, adopted on September 11, 1776, provides only for "trial by jury *of facts.*" (Emphasis added). Thereafter, in respective Articles I, Section 4 of the Delaware Constitutions of 1792, 1831, and the present Constitution of 1897, the following provision reappears: "Trial by jury shall be as heretofore."

By clear historic and legal precedent this guarantees the right to trial by jury only as it existed when the common law was imported from England in 1776. *Fountain v. State*, Del.Supr., 275 A.2d 251, 251 (1971). *Claudio v. State*, 585 A.2d at 1290–91, 1297. Thus, the jury's historic role was limited to that of a trier of facts, determining guilt or innocence. It had no function in passing sentence. Indeed, any consideration of punishment by the jury was improper. As is obvious, that principle is so deeply rooted in precedent as to be immutable, since this Court has consistently held that, absent express statutory authorization, the jury should not even consider the sentencing consequences which flow from a guilty verdict. *Boatson v. State*, Del. Supr., 457 A.2d 738, 741 (1983); *Smith v. State*, Del.Supr., 317 A.2d 20, 25–26 (1974). Accordingly, the defendants are not guaranteed the right under the Delaware Constitution to have a jury determine punishment in a capital case.

Certified Question 4 is answered in the negative.

## VI.

As to Certified Questions 5, 6 and 7:

Because we find no portion of the new law to be unconstitutional, questions 5, 6 and 7 are moot.

## VII.

As to Certified Questions 8 and 9:

■ Under Section 6 of 68 Del.Laws ch. 189, the new law became "effective immediately upon the signature of the Governor and shall [be applicable] to all defendants tried or sentenced after its effective date." The Superior Court, in certified questions 8 and 9, has asked this Court whether application of the new law violates either the *Ex Post Facto* Clause of Article I, Section 10 of the United States Constitution or the Due Process Clause of Article I, Section 7, of the Delaware Constitution. We find that application of the new law to all of the defendants in this proceeding is constitutionally permissible.

■ Article I, Section 10, of the United States Constitution prohibits states from enacting *ex post facto* laws. That clause has been interpreted as follows:

It is settled, by decisions of this Court so well known that their citation may be dispensed with, that any statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when

the act was committed, is prohibited as *ex post facto.*

*Collins v. Youngblood,* 497 U.S. 37, 110 S.Ct. 2715, 2719, 111 L.Ed.2d 30 (1990) (quoting *Beazell v. Ohio,* 269 U.S. 167, 169–70, 46 S.Ct. 68, 68–69, 70 L.Ed. 216 (1925)). It is equally well established that, "[e]ven though it may work to the disadvantage of a defendant, a procedural change [in the law] is not *ex post facto.*" *Dobbert v. Florida,* 432 U.S. 282, 293, 97 S.Ct. 2290, 2298, 53 L.Ed.2d 344 (1977); *see, e.g., Hopt v. Utah,* 110 U.S. 574, 4 S.Ct. 202, 28 L.Ed. 262 (1884) (retroactive application of change in law permitting convicted felon to be a witness during trial, although obviously detrimental to a defendant, was not *ex post facto* ); *Thompson v. Missouri,* 171 U.S. 380, 18 S.Ct. 922, 43 L.Ed. 204 (1898) (retroactive application of law making evidence admissible which was not admissible at defendant's first trial was not *ex post facto* ); *accord State v. Moyer,* Del.Supr., 387 A.2d 194, 197 (1978).

Defendants contend that it is unconstitutional for the State to apply the new law to capital crimes occurring before the effective date of the amendment. Specifically, they claim that the new law is both retrospective and disadvantageous to them and, thus, is *ex post facto.* Defendants' argument is based on a flawed analysis squarely at odds with established precedent of the United States Supreme Court.

The case most analogous to the issue here is *Dobbert v. Florida,* 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977). In *Dobbert,* the defendant was convicted of first-degree murder in Florida. At the time of the offense, Florida law mandated that any person convicted of a capital felony was to be punished by death unless a majority of the jury recommended mercy. The Florida Supreme Court found this sentencing procedure to be unconstitutional. Thereafter, the Florida legislature enacted a new death penalty sentencing procedure, which was applicable at the time of Dobbert's trial. That revised statute had been found constitutional by both the Florida and United States Supreme Courts. *See State v. Dixon,* Fla.Supr., 283 So.2d 1 (1973); *Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976). Dobbert's sentencing hearing was held under the revised law. By a 10–2 majority, his jury recommended a sentence of life imprisonment. The trial judge, nonetheless, exercised his authority under the revised statute, overruled the jury's recommendation, and sentenced Dobbert to death.

Dobbert appealed, contending that application of the revised death penalty law was an impermissible *ex post facto* punishment. The Supreme Court upheld the death sentence, and rejected Dobbert's *ex post facto* claim. The Court found that the changes in Florida's death penalty law were procedural and, on the whole, ameliorative. Accordingly, they were not violative of the *Ex Post Facto* Clause. The revised statute "simply altered the methods employed in determining whether the death penalty was to be imposed; there was no change in the quantum of punishment attached to the crime." *Dobbert,* 432 U.S. at 293–94, 97 S.Ct. at 2298. That is precisely the issue before us.

Given the teaching in *Dobbert,* it is clear that the changes effected by Delaware's new death penalty statute are procedural. The revisions in the new law, like those in *Dobbert,* merely alter the method of determining imposition of the death penalty. The quantum of punishment for the crime of first-degree murder in Delaware remains unchanged.

Defendants' attempts to distinguish *Dobbert* are unpersuasive. While it is true, as defendants contend, that the revised death penalty law in *Dobbert* replaced an unconstitutional statute, this had no bearing on the *ex post facto* issue. Under such circumstances the validity of a death penalty statute, plainly procedural in nature, is not determined by the constitutionality of the law it replaces.

Defendants also note that *Dobbert* found the revisions to the Florida death penalty statute to be, on the whole, ameliorative and, therefore, not *ex post facto. Dobbert,* 432 U.S. at 294, 97 S.Ct. at 2299 ("It is axiomatic that for a law to be *ex post facto* it must be more onerous than the prior

law"). Thus, defendants assert that since the new law enhances the likelihood that a death sentence will be imposed, the changes are not ameliorative. Defendants therefore dismiss *Dobbert* as authority. That argument, however, rests upon a flawed analysis. *Dobbert* explicitly held that these procedural and ameliorative aspects of Florida law were *"independent bases* for [the] decision." *Dobbert,* 432 U.S. at 292 n. 6, 97 S.Ct. at 2298 n. 6 (emphasis added). Clearly, a procedural change need not be ameliorative to overcome a challenge under the *Ex Post Facto* Clause. *Id.* (citing *Beazell v. Ohio,* 269 U.S. 167, 46 S.Ct. 68, 70 L.Ed. 216 (1925) (retroactive application of law mandating joint trials for persons jointly indicted, although not ameliorative in nature, was procedural and, therefore, not *ex post facto* )).

Because we find that the revisions to Delaware's death penalty statute are purely procedural and, therefore, not *ex post facto,* we need not decide whether the new law is ameliorative. The new law merely expresses the legislature's view, as does the law of other states, that a judge is the more appropriate person to make the ultimate sentencing decision in a capital case. *See, e.g.,* Fla.Stat.Ann. § 921.141; Ala.Code § 13A-5-47; Ind.Code § 35-50-2-9.

■ Finally, our conclusions regarding the defendants' *ex post facto* claims are buttressed by the recent case of *Collins v. Youngblood,* 497 U.S. 37, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990). There, the Supreme Court of the United States rejected an *ex post facto* claim and overruled the long-standing cases of *Kring v. Missouri,* 107 U.S. 221, 2 S.Ct. 443, 27 L.Ed. 506 (1883), and *Thompson v. Utah,* 170 U.S. 343, 18 S.Ct. 620, 42 L.Ed. 1061 (1898). We need not dwell on the facts of those cases. Suffice it to say that by rejecting *Kring* and *Thompson,* it is now beyond peradventure that under *Collins* the new law survives an *ex post facto* analysis. Drawing on *Col-*

*lins,* it is apparent that the new law does not involve "a right that has anything to do with the definition of crimes, defenses, or punishments, which is the concern of the *Ex Post Facto* Clause." *Collins,* 110 S.Ct. at 2724. Thus, procedural statutes which merely act to the disadvantage of those affected by their enactment are not prohibited as *ex post facto* laws.

If anything, defendants' arguments are similar to those advanced in *Thompson, supra,* and rejected in *Collins.* There is little more to be said for them except to note that they do not even find support in the concurring opinion in *Collins.* Although agreeing with the majority's conclusion in *Collins,* three Justices did not join in overruling *Kring* and *Thompson. See Collins,* 110 S.Ct. at 2724 (Stevens, J., concurring). Specifically, the concurrence observed that the *Ex Post Facto* Clause prohibits "substantial changes in procedure *that are designed to protect the defendant from a wrongful conviction." Id.* (emphasis added). Nothing in the new law subjects a defendant to the prospect of a wrongful conviction.

Defendants also rely on *Miller v. Florida,* 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987). That reliance is misplaced, since *Miller* plainly involved the retroactive application of revised sentencing guidelines which increased the quantum of a defendant's punishment—an effect manifestly prohibited by the *Ex Post Facto* Clause. *Id.* at 433-34, 107 S.Ct. at 2453.

Finally, defendants argue that application of the new law violates the Due Process Clause of Article I, Section 7 of the Delaware Constitution. The Delaware Constitution contains no express *Ex Post Facto* Clause, and this Court has never held that the Due Process Clause of the State Constitution incorporates *ex post facto* protections akin to those provided in the United States Constitution.[5] Even if we

---

5. Interestingly, the Delaware Declaration of Rights of 1776, which pre-dated the United States Bill of Rights by 15 years, provides in Section 11:

> That retrospective laws, *punishing offenses committed before the existence of such laws,* are oppressive and unjust, and ought not to be made.
> (Emphasis added).

were to find that such a prohibition exists under the State Constitution, given the narrow scope of the Declaration of Rights of 1776, it would provide no greater protection than that arising under the United States Constitution. Thus, defendants' arguments are to no avail.

Defendants, with support from the amicus curiae, attempt to characterize the changes effected by the new law as substantive, because the new law: a) allegedly makes mandatory a sentence, which under the prior law, was discretionary, and b) eliminates the unanimous jury requirement thus making a death sentence more likely. That position is without merit.

The amicus primarily relies on *State v. Dickerson*, Del.Supr., 298 A.2d 761 (1973), in support of their first proposition. *Dickerson*, however, is neither controlling nor persuasive on this issue. Amicus' argument is predicated upon a flawed interpretation of what is meant by a mandatory sentence. In *Dickerson*, this Court held that a former death penalty statute, permitting a jury to recommend mercy, was unconstitutional because neither the judge nor the jury had any standards by which to guide their free exercise of discretion. Without the mercy provision the first-degree murder statute then required a mandatory death sentence upon conviction of a capital crime. 11 *Del.C.* § 571 (1970). This Court held that retroactive application of the statute violated the *Ex Post Facto* Clause because it "[made] mandatory what was before only the maximum sentence." *Dickerson*, 298 A.2d at 768 (quoting *Lindsey v. Washington*, 301 U.S. 397, 57 S.Ct. 797, 81 L.Ed. 1182 (1937)).

Clearly in *Dickerson*, the problem was a "mandatory" death sentence upon a conviction for first-degree murder. There was no possibility of an alternative punishment. The new law is not "mandatory" in the sense contemplated in *Dickerson*. Here, imposition of the death penalty is based upon the predicate factual findings made by the jury and trial judge as to aggravat-

ing and mitigating circumstances. The existence of such factors and their relative weight, although ultimately determined by the trial judge, do not mandate a death sentence unless the aggravating factors outweigh the mitigating circumstances. Thus, the new law is not "impermissibly mandatory." *Walton v. Arizona*, 497 U.S. 639, 110 S.Ct. 3047, 3056, 111 L.Ed.2d 511 (1990); *Blystone v. Pennsylvania*, 494 U.S. 299, 306–07, 110 S.Ct. 1078, 1083, 108 L.Ed.2d 255 (1990); *Boyde v. California*, 494 U.S. 370, 374, 110 S.Ct. 1190, 1195, 108 L.Ed.2d 316 (1990); *Proffitt v. Florida*, 428 U.S. 242, 260–61, 96 S.Ct. 2960, 2970, 49 L.Ed.2d 913 (1976). By ignoring the weighing process, a crucial and constitutionally required step under the new law, the amicus demonstrates the weakness of its argument. The sentencing process remains basically discretionary, merely shifting the ultimate decision from the jury to the trial judge.

The amicus also argues that the new law's elimination of the unanimous jury requirement for the imposition of a death sentence effects a substantive change. Again, the point is without merit. As we previously stated, a change in the law does not become substantive merely because it works to the disadvantage or detriment of those affected by it. *See, e.g., Dobbert, supra, Beazell, supra, Collins, supra. Cf. In the Matter of the Petition of the State for a Writ of Mandamus*, Del.Supr., 603 A.2d 814 (1992).

Accordingly, Certified Questions 8 and 9 are answered in the negative.

### VIII.

As to Certified Question 10:

■ The jury must be "death qualified." A prospective juror in a capital case is subject to excusal for cause if his or her views would "prevent or substantially impair" the performance of his or her duties as a juror in accordance with the court's instructions and the juror's oath. *DeShields v. State*, Del.Supr., 534 A.2d 630, 634

This appears to be less protective of personal rights than the general *Ex Post Facto* Clause of the United States Constitution.

(1987), *cert. denied,* 486 U.S. 1017, 108 S.Ct. 1754, 100 L.Ed.2d 217 (1988) (quoting *Wainwright v. Witt,* 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985)). Defendants contend that under the new law jurors "have no significant function." Thus, there is no reason to exclude prospective jurors solely because their views prevent or substantially impair their ability to fairly and impartially decide the issue of punishment. Plainly, there is no merit to this proposition, and defendants present no rational authority for it.

Although not the final arbiters of punishment, jurors still play a vital and important role in the sentencing procedure. The jury sits as the conscience of the community in deciding whether to recommend life imprisonment or the death penalty. *Sanders v. State,* Del.Supr., 585 A.2d 117, 133 (1990) (quoting *Witherspoon v. Illinois,* 391 U.S. 510, 519, 88 S.Ct. 1770, 1775, 20 L.Ed.2d 776 (1968)). Any personal views which would prevent its members from impartially performing this solemn responsibility in accordance with the trial court's instructions are impermissible and contrary to law.

Accordingly, Certified Question 10 is answered in the affirmative.

Questions Answered.

APPENDIX I

SPONSOR: Sen. Sharp; Reps. Spence, Oberle; Sens. Adams, Cordrey, Sokola, Marshall, McBride, Vaughn, Cook, Torbert, Venables, Connor, Martin; Reps. Hebner Reynolds, Jonklert, Caulk, Petrilli, Houghton, Lofink, Clark, West, Gilligan, Bennett, Van Sant, Brady, B. Ennis, Roy, Lee, Buckworth, Corrozi, Ewing, Mack, Quillen, Carey, Fallon, Boykin, DiPinto, Davis, Smith, Taylor, Amick, Maroney

DELAWARE STATE SENATE
136TH GENERAL ASSEMBLY
SENATE SUBSTITUTE NO. __1__ OCT 24 1991
TO
SENATE BILL NO. 79

AN ACT TO AMEND TITLE 11, DELAWARE CODE RELATING TO THE IMPOSITION OF THE DEATH PENALTY.

BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF DELAWARE:

Section 1. Amend Section 4209(c)(3), Title 11, Delaware Code by striking subsection (c)(3) in its entirety and inserting in lieu thereof the following:

"(3)(a) Upon the conclusion of the evidence and arguments the judge shall give the jury appropriate instructions and the jury shall retire to deliberate and recommend to the Court an answer to the following questions:

(i) Whether the evidence shows beyond a reasonable doubt the existence of at least one aggravating circumstance as enumerated in subsection (e) of this section; and

(ii) Whether, by a preponderance of the evidence, after weighing all relevant evidence in aggravation or mitigation which bear upon the particular circumstances or details of the commission of the offense and the character and propensities of the offender, the aggravating circumstances found to exist outweigh the mitigating circumstances found to exist.

(b) The jury shall report to the Court its final vote by the number of each affirmative and negative votes on each question."

Section 2. Amend Section 4209(d), Title 11, Delaware Code by striking Section 4209(d) in its entirety and inserting in lieu thereof the following:

"(d) Determination of sentence. (1) A sentence of death shall be imposed, after considering the recommendation of the jury, if a jury is impaneled, if the Court finds:

(1)(a) Beyond a reasonable doubt at least 1 statutory aggravating circumstance; and

(b) By a preponderance of the evidence, after weighing all relevant evidence in aggravation or mitigation which bears upon the particular circumstances or details of the commission of the offense and the character and propensities of the offender, that the aggravating circumstances found by the Court to exist outweigh the mitigating circumstances found by the Court to exist.

(2) Otherwise, the Court shall impose a sentence of imprisonment for the remainder of the defendant's natural life without benefit of probation or parole or any other reduction.

(3) If the Court imposes a sentence of death, it shall set forth in writing its findings upon which the sentence of death is based."

Section 3. Amend Section 4209(e)(1) by striking the words "jury, unanimously, or judge when applicable," and inserting in lieu thereof the word "judge".

Section 4. Amend Section 4209(g)(2) by striking the words "jury's or".

Section 5. Amend Section 4209(g)(4) by striking subsection (b) and relettering the remaining subsections.

Section 6. This act shall become effective immediately upon the signature of the Governor and shall apply to all defendants tried or sentenced after its effective date.

## SYNOPSIS

This bill would cause the judge to make the final determination as to whether a person convicted of first degree murder should be sentenced to death or life imprisonment. The bill provides a clear statutory framework to guide the judge and the jury would assist in this determination by rendering, after deliberations, as an advisory sentence to be imposed. This bill generally follows the Florida statute as approved by the United States Supreme Court. *Proffitt v. Florida*, 428 U.S. 242, 260 [96 S.Ct. 2960, 2970, 49 L.Ed.2d 913] (1976) (concurring opinion of Justice White, Chief Justice Burger, and Justice Rehnquist) ("Under Florida law, the sentencing judge is *required* to impose the death penalty on all first-degree murderers as to whom the statutory aggravating factors outweigh the mitigating factors.") *See also Blystone v. Pennsylvania*, 494 U.S. [299], 110 S.Ct. 1227 [1078], 108 L.Ed.2d 369 [255] (1990).

Author: Sen. Sharp