David F. DAWSON, Defendant Below, Appellant,

v.

STATE of Delaware, Plaintiff Below, Appellee.

Supreme Court of Delaware.

Submitted: June 16, 1992.
Decided: June 26, 1992.

---

Bernard J. O'Donnell (argued), and Brian J. Bartley, Office of Public Defender, Wilmington, for appellant.

Richard E. Fairbanks, Jr. (argued), and Loren C. Meyers, Dept. of Justice, Wilmington, for appellee.

Before VEASEY, C.J., HORSEY, MOORE, WALSH, and HOLLAND, JJ. (constituting the Court *en Banc*).

HOLLAND, Justice:

The defendant-appellant, David F. Dawson ("Dawson"), was convicted of four counts of Murder in the First Degree, six counts of Possession of a Deadly Weapon During the Commission of a Felony, Robbery in the First Degree, Burglary in the Second Degree, and Possession of a Deadly Weapon by a Prohibited Person. After a two-day penalty hearing, the jury unanimously recommended a sentence of death for Dawson on each of the four counts of Murder in the First Degree. Thereafter, in accordance with the jury's recommendations, Dawson was sentenced to death by lethal injection. Dawson's convictions and sentences,[1] including the sentences of death, were affirmed on direct appeal by

this Court. *Dawson v. State*, Del.Supr., 581 A.2d 1078 (1990).

The United States Supreme Court granted Dawson's petition for a writ of certiorari to review a limited aspect of Dawson's capital penalty hearing. *Dawson v. Delaware*, ——— U.S. ———, 111 S.Ct. 1412, 113 L.Ed.2d 465 (1991). The United States Supreme Court framed the question presented to it by Dawson's petition as "whether the First and Fourteenth Amendments prohibit the introduction in a capital sentencing proceeding of the fact that the defendant was a member of an organization called the Aryan Brotherhood, where the evidence has no relevance to the issues being decided in the proceeding." *Dawson v. Delaware*, ——— U.S. ———, 112 S.Ct. 1093, 1095, 117 L.Ed.2d 309 (1992). It answered that question in the affirmative but remanded the matter for a harmless error determination. *Id.* The matter is now before this Court for further review, consistent with the opinion of the United States Supreme Court. *Id.* 112 S.Ct. at 1099.

This Court has concluded that it is impossible to state that the constitutional error, which the United States Supreme Court ascribed to Dawson's capital sentencing proceeding, was harmless beyond a reasonable doubt. Therefore, this matter is remanded to the Superior Court for the purpose of conducting a new penalty hearing.

*First Amendment Capital
Sentencing Hearing*

During Dawson's direct appeal, this Court was presented with a question of first impression: Does the United States Constitution erect a *per se* barrier to the admission of evidence concerning one's beliefs and associations, during a capital sentencing hearing, simply because those beliefs and associations are protected by the First Amendment? *Dawson v. Delaware*, 112 S.Ct. at 1097. This Court concluded that there was no such barrier. *Dawson v. State*, 581 A.2d at 1100–1104. The United States Supreme Court agreed with this

---

1. "The Superior Court also sentenced Dawson to be incarcerated for a total of 100 years with

regard to the other convictions." *Dawson v. State*, Del.Supr., 581 A.2d 1078, 1081 (1990).

Court's conclusion. *Dawson v. Delaware,* 112 S.Ct. at 1097.

Nevertheless, the United States Supreme Court held that "Dawson's First Amendment rights were violated by the admission of the Aryan Brotherhood evidence in this case, because the evidence proved nothing more than Dawson's abstract beliefs." *Id.* at 1098. The *ratio decidendi* of the Supreme Court's holding was, in part, as follows:

> Before the penalty hearing, the prosecution claimed that its expert witness would show that the Aryan Brotherhood is a white racist prison gang that is associated with drugs and violent escape attempts at prisons, and that advocates the murder of fellow inmates. If credible and otherwise admissible evidence to that effect had been presented, we would have a much different case. But, after reaching an agreement with Dawson, the prosecution limited its proof regarding the Aryan Brotherhood to the stipulation. The brief stipulation proved only that an Aryan Brotherhood prison gang originated in California in the 1960's, that it entertains white racist beliefs, and that a separate gang in the Delaware prison system calls itself the Aryan Brotherhood. We conclude that the narrowness of the stipulation left the Aryan Brotherhood evidence totally without relevance to Dawson's sentencing proceeding.

*Id.* at 1097.

The United States Supreme Court subsequently concluded that "the question of whether the wrongful admission of the Aryan Brotherhood evidence at sentencing was harmless error" was not before it at that time. *Id.* at 1099. Therefore, that issue was left "open" for consideration by this Court. *Id.* The parties have presented supplemental memoranda and oral argument on that subject to this Court.

### First Amendment Violation
### Harmless Error Review

■ Dawson argues that the violation of his First Amendment rights, during his capital sentencing hearing, is not susceptible to a harmless error review. Dawson finds support for that proposition in Justice Blackmun's concurring opinion which states: "Because of the potential chilling effect that consideration of First Amendment activity at sentencing might have, there is a substantial argument that harmless-error analysis is not appropriate for the type of error before us today." [2] *Id.* at 1100 (Blackmun, J., concurring). However, this Court has concluded that the majority would not have opined that "[t]he question of whether the wrongful admission of the Aryan Brotherhood evidence at sentencing was harmless error is ... open for consideration by the Supreme Court of Delaware on remand," if First Amendment errors were not subject to a harmless error analysis. *Dawson v. Delaware,* 112 S.Ct. at 1099. *See also Pope v. Illinois,* 481 U.S. 497, 107 S.Ct. 1918, 95 L.Ed.2d 439 (1987).

Nevertheless, we are cognizant that, when the United States Supreme Court remanded the capital penalty hearing phase of Dawson's trial to this Court, it cited *Clemons v. Mississippi,* 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990). In *Clemons,* the United States Supreme Court stated:

> Nothing in this opinion is intended to convey the impression that state appellate courts are required to or necessarily should engage in reweighing or harmless error analysis when errors have occurred in a capital sentencing proceeding. Our holding is only that such procedures are constitutionally permissible. In some situations, a state appellate court may conclude that peculiarities in a case make appellate reweighing or harmless error

**2.** Justice Blackmun noted that the United States Supreme Court "has declined to apply harmless-error analysis to certain categories of constitutional error." *Id.* at 1099 (Blackmun, J., concurring) (citing *Batson v. Kentucky,* 476 U.S. 79, 100, 106 S.Ct. 1712, 1725, 90 L.Ed.2d 69 (1986) (racial discrimination in the selection of a petit jury); *Vasquez v. Hillery,* 474 U.S. 254, 261–262, 106 S.Ct. 617, 622–23, 88 L.Ed.2d 598 (1986) (racial discrimination in the selection of a grand jury); *Waller v. Georgia,* 467 U.S. 39, 49–50, and n. 9, 104 S.Ct. 2210, 2217, & n. 9, 81 L.Ed.2d 31 (1984) (right to a public trial); *Tumey v. Ohio,* 273 U.S. 510, 535, 47 S.Ct. 437, 445, 71 L.Ed. 749 (1927) (trial before an impartial judge)).

analysis extremely speculative or impossible. We have previously noted that appellate courts may face certain difficulties in determining sentencing questions in the first instance.

*Clemons v. Mississippi*, 494 U.S. at 754, 110 S.Ct. at 1451.

### Harmless Error Standard of Review

■ Any harmless error analysis is a case-specific, fact-intensive exercise. This Court has previously considered the issue of "harmless error" in a variety of contexts, including a capital sentencing proceeding. *See Flamer v. State*, Del.Supr., 490 A.2d 104 (1984). This Court has "consistently refused to reverse convictions for errors found to be harmless." *Van Arsdall v. State*, Del.Supr., 524 A.2d 3, 10 (1987). *See also Claudio v. State*, Del. Supr., 585 A.2d 1278 (1991); *Hammond v. State*, Del.Supr., 569 A.2d 81 (1989); *Brokenbrough v. State*, Del.Supr., 522 A.2d 851 (1987); *Michael v. State*, Del.Supr., 529 A.2d 752 (1987).

■ The seminal case on appellate harmless error jurisprudence is *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). In *Chapman*, the Court began its discourse by identifying the parties' respective burdens of proof. The defendant has the initial burden of demonstrating error. If the defendant is successful in discharging that obligation, the burden of proof shifts to the State. In *Chapman*, the Court held:

> Certainly error, constitutional error, in illegally admitting highly prejudicial evidence or comments, casts on someone other than the person prejudiced by it a burden to show that it was harmless. It is for that reason that the original common-law harmless-error rule put the burden on the beneficiary of the error either to prove that there was no injury or to suffer a reversal of his erroneously obtained judgment.

*Chapman v. California*, 386 U.S. at 24, 87 S.Ct. at 828. Therefore, the prosecution has the burden of demonstrating, beyond a reasonable doubt, that any error was harmless. *Id.* at 26, 87 S.Ct. at 829.

In *Chapman*, and its progeny, the United Supreme Court has also explained how appellate courts should evaluate whether the prosecution has sustained its burden of proof. The major premise of such an evaluation is that "[a]n error in admitting plainly relevant evidence which *possibly* influenced the jury adversely to a litigant cannot ... be conceived of as harmless." *Id.* at 23–24, 87 S.Ct. at 827–28 (emphasis added). Consequently, the proper appellate focus in the analytical framework of the harmless error doctrine is:

> not whether the legally admitted evidence was sufficient to support the death sentence, which we assume it was, but rather, whether the State has proved "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained."

*Satterwhite v. Texas*, 486 U.S. 249, 258–59, 108 S.Ct. 1792, 1798–99, 100 L.Ed.2d 284 (1988) (citing *Chapman v. California*, 386 U.S. at 24, 87 S.Ct. at 828). In vacating a decision in another capital sentencing proceeding earlier this month, the United States Supreme Court reiterated that the *sine qua non* of an appellate court's conclusion that a constitutional error "was harmless beyond a reasonable doubt" must be a finding that "it did not contribute to the [sentence] obtained." *Sochor v. Florida*, — U.S. —, —, 112 S.Ct. 2114, —, 119 L.Ed.2d 326, 60 U.S.L.W. 4486, 4489 (1992) (citing *Chapman v. California*, 386 U.S. at 24, 87 S.Ct. at 828).

### This Case Harmless Error Review

■ The United States Supreme Court has concluded that the Aryan Brotherhood evidence was admitted, albeit by stipulation, during Dawson's capital sentencing hearing in violation of Dawson's First and Fourteenth Amendment rights. *Dawson v. Delaware*, 112 S.Ct. at 1098. Accordingly, the State now bears the burden of demonstrating, beyond a reasonable doubt, that the violation of Dawson's First and Fourteenth amendment rights, during his capi-

tal sentencing hearing, was a harmless error. *Chapman v. California,* 386 U.S. at 24, 87 S.Ct. at 828. In determining whether the State has met that burden, this Court must adhere to the teachings of *Chapman* and its progeny.

The capital sentencing proceeding in Dawson's case was conducted in accordance with the applicable Delaware statute, prior to its recent amendment. *See State v. Cohen,* Del.Supr., 604 A.2d 846 (1992). Pursuant to that unamended statute, a unanimous "finding by the jury of a statutory aggravating circumstance, and a consequent recommendation of death, supported by the evidence" was binding upon the Superior Court. 11 *Del.C.* § 4209(d)(1)(b). Conversely, the unamended Delaware statute provided that, if the jury could not unanimously find the existence of at least one statutory aggravating circumstance and "unanimously recommend death, the [Superior] Court shall sentence the defendant to life imprisonment without the benefit of probation or parole." 11 *Del.C.* § 4209(d)(3).

Thus, when Dawson's capital sentencing hearing was conducted, the unamended Delaware statute vested the jury with absolute discretion not to impose a sentence of death, after consideration of all factors in aggravation and mitigation. *Whalen v. State,* Del.Supr., 492 A.2d 552, 562 (1985). In fact, one of the purposes of amending the Delaware death penalty statute was to change the role of the judge and the jury in the sentencing phase of a capital murder trial. *Cohen v. State,* 604 A.2d at 849. The jury now functions, under the amended statute, only in an advisory capacity. *Id.*

In the case *sub judice,* the State argues that the admission of the Aryan Brotherhood evidence was harmless. Nevertheless, the State has candidly acknowledged in its briefs before the United States Supreme Court and this Court upon remand:

When they turned to Dawson's character, the prosecutors waived Dawson's criminal record, his self-identification as Abaddon, and his embrace of the Aryan Brotherhood into a central theme that Dawson had an incorrigible character with his entire life showing repeated decisions to reject any redeeming paths.

After the United States Supreme Court carefully examined the presentation of the Aryan Brotherhood evidence by the State during Dawson's capital sentencing hearing, it concluded that "on the present record one is left with the feeling that the Aryan Brotherhood evidence was employed simply because the jury would find these beliefs morally reprehensible." *Dawson v. Delaware,* 112 S.Ct. at 1098.

Given the United States Supreme Court's characterization of the Aryan Brotherhood evidence presented by the State, and the State's acknowledgement that the purpose of presenting that evidence was to weave Dawson's "embrace of the Aryan Brotherhood into a central theme that Dawson had an incorrigible character with his entire life showing repeated decisions to reject any redeeming paths," it is impossible for this Court to conclude the State has demonstrated, beyond a reasonable doubt, that the Superior Court's error in admitting the evidence about the Aryan Brotherhood did not contribute to the death sentences obtained by the State. *Accord Satterwhite v. Texas,* 486 U.S. 249, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988). *See Sochor v. Florida,* — U.S. at —, 112 S.Ct. at — (citing *Chapman v. California,* 386 U.S. at 24, 26, 87 S.Ct. at 829).

### Conclusion

The United States Supreme Court has held that the Superior Court committed constitutional error by the abstract manner in which the Aryan Brotherhood evidence was admitted during Dawson's capital penalty hearing. *Dawson v. Delaware,* — U.S. —, 112 S.Ct. 1093, 117 L.Ed.2d 309 (1992). This Court has concluded that the

State has not demonstrated, beyond a reasonable doubt, that constitutional error was harmless. *Satterwhite v. Texas,* 486 U.S. 249, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988). Therefore, *a fortiori,* Dawson's sentences of death must be vacated. *Id.* This matter is remanded to the Superior Court for a new capital sentencing hearing.[3] *Id.*

**3.** Dawson argues that the Superior Court's decision not to rule on his motion *in limine,* to exclude evidence relating to the Aryan Brotherhood, until the penalty phase of his initial proceeding requires a new trial. That argument was considered and rejected by this Court during Dawson's direct appeal. *Dawson v. State,* Del.Supr., 581 A.2d 1078, 1085–88 (1990). This Court has reconsidered Dawson's argument, in view of the United States Supreme Court's opinion. We adhere to our original disposition of that issue. *Id.*