David F. DAWSON, Defendant Below, Appellant,

v.

STATE of Delaware, Plaintiff Below, Appellee.

Supreme Court of Delaware.

Submitted: Jan. 25, 1994.
Decided: Feb. 23, 1994.

Bernard J. O'Donnell, Office of the Public Defender, Wilmington, for appellant.

Richard E. Fairbanks, Jr. (argued), Loren C. Meyers, Timothy J. Donovan, Jr., Ferris W. Wharton and Charles E. Butler, Dept. of Justice, Wilmington, for appellee.

Before VEASEY, Chief Justice, HORSEY, MOORE, WALSH, and HOLLAND, Justices (constituting the Court *en Banc*).

HOLLAND, Justice:

The defendant-appellant, David F. Dawson ("Dawson"), was convicted on four counts of Murder in the First Degree, six counts of Possession of a Deadly Weapon During the Commission of a Felony, Robbery in the First Degree, Burglary in the Second Degree, and Possession of a Deadly Weapon by a Prohibited Person. After a penalty hearing was held on June 27 and 28, 1988, pursu-

ant to the then existing Delaware death penalty statute, Dawson was sentenced to death. Dawson's convictions and death sentence were affirmed by this Court on direct appeal. *Dawson v. State,* Del.Supr., 581 A.2d 1078 (1990).

Dawson's death sentence (but not his convictions) was vacated by the United States Supreme Court. *Dawson v. Delaware,* —— U.S. ——, 112 S.Ct. 1093, 117 L.Ed.2d 309 (1992). Another penalty hearing was ordered regarding the appropriate sentences for Dawson's convictions of Murder in the First Degree. *Dawson v. State,* Del.Supr., 608 A.2d 1201 (1992). Dawson's convictions and other sentences are final judgments and are not at issue in this appeal.

A new penalty hearing, pursuant to the 1991 amendments to Delaware's death penalty statute, was conducted in March 1993. 11 *Del.C.* § 4209. The jury unanimously recommended a sentence of death. A Superior Court judge, who had the ultimate decision-making authority under the amended Delaware statute, sentenced Dawson to death by lethal injection for his convictions of Murder in the First Degree. An automatic appeal was docketed with this Court. 11 *Del.C.* § 4209(g). Dawson's attorney also filed a timely notice of appeal. Those appeals have been consolidated.[1]

### Dawson's Contentions

Dawson has raised five issues in this appeal regarding his second penalty hearing. First, Dawson submits that the application of a more severe death penalty sentencing law, which was enacted after the commission of the murder for which he was convicted, denied him due process of law. Second, Dawson argues that the striking of certain jurors for cause, on the basis that those jurors had reservations about the imposition of the death penalty, was erroneous and was not constitutionally mandated. Third, Dawson contends that the disclosure to the jury, by a witness for the State, that a death sentence had been previously imposed violated his due process rights. Fourth, Dawson contends

that the jury instruction concerning the State's burden of proof with respect to nonstatutory aggravating evidence was legally inadequate. Finally, Dawson argues that the jury instructions, taken as a whole, were constitutionally deficient and materially misleading. According to Dawson, those instructions could have led the jury to believe that he was required to prove the existence of mitigating circumstances beyond a reasonable doubt.

This Court has carefully considered each of Dawson's contentions. We have concluded that none of Dawson's allegations of reversible error has merit. Therefore, the judgments of the Superior Court, sentencing Dawson to death by lethal injection, are affirmed.

### Facts

The issues on appeal relate exclusively to the proceedings during Dawson's penalty hearing. Therefore, the underlying facts with regard to Dawson's First Degree Murder conviction will be stated only briefly. An extensive recitation of those facts has been set forth in a previously reported opinion. *See Dawson v. State,* Del.Supr., 581 A.2d 1078, 1082–84 (1990). *See also Dawson v. Delaware,* —— U.S. ——, 112 S.Ct. 1093, 117 L.Ed.2d 309 (1992); *Dawson v. State,* Del. Supr., 608 A.2d 1201 (1992).

In the early morning hours of December 1, 1986, Dawson and three other prisoners escaped from the Delaware Correctional Center. Later that day, Madeline Kisner ("Kisner") was found murdered in her nearby home. Kisner had been bound, struck in the head, and stabbed to death. Dawson was apprehended by police the next morning. Based upon the circumstantial and physical evidence presented by the State, Dawson was convicted, *inter alia,* of burglary, robbery, and Kisner's murder. *Dawson v. State,* 581 A.2d at 1081. Those judgments of conviction have been affirmed. *Id.* at 1082.

Following Dawson's appeals to this Court and the United States Supreme Court, a new

---

1. On April 8, 1993, this Court stayed the execution of Dawson's death sentence until the completion of this Court's review.

penalty hearing was scheduled to determine whether Dawson should be sentenced to death for his convictions of Murder in the First Degree. At the conclusion of that hearing, the Superior Court instructed the jury that the fact Dawson had been convicted of killing Kisner (1) during the commission of a burglary and/or robbery and (2) while an escapee from a penal institution, established the existence of two statutory aggravating circumstances, as a matter of law. 11 *Del.C.* § 4209(e)(1)a, j. *See also Red Dog v. State,* Del.Supr., 616 A.2d 298, 307 (1992); *Pennell v. State,* Del.Supr., 604 A.2d 1368, 1375 (1992). During the penalty hearing, the State presented evidence of a third statutory aggravating circumstance, i.e., that the murder had been committed for pecuniary gain. 11 *Del.C.* § 4209(e)(1)o.

The State also presented evidence during the penalty hearing of what it alleged to be non-statutory aggravating circumstances. First, the State argued that the fact Kisner was bound, gagged, and defenseless when she was murdered constituted an aggravating circumstance. Second, the State presented evidence of Dawson's multiple convictions for various crimes, which had resulted in a lifetime of almost continuous incarceration, beginning with Dawson's confinement as a juvenile at the age of thirteen. *Compare Dawson v. State,* 581 A.2d at 1101. The State argued that Dawson's extensive criminal record was characteristic of his lawless nature and his non-amenability to rehabilitation while incarcerated. *Compare id.*

During the penalty hearing, the defense presented evidence of what it contended were mitigating circumstances. First, the defense focused upon the dysfunctional nature of Dawson's childhood. Testimony was presented that as a result of his illegitimate birth, Dawson was only gradually accepted by his mother's family. He apparently had no relationship or contact with his natural father. Dawson's stepfather was an alcoholic, who was eventually imprisoned as a sex offender.

Second, according to the defense, Dawson's mother took little interest in him. Dawson's mother did not appear at the sentencing hearing. As a youth, Dawson resided with various family members. Dawson did poorly in school and was truant. Dawson learned to read and write during his periods of incarceration.

Third, in response to the State's evidence of Dawson's criminal history, the defense argued that although Dawson's criminal record was extensive, it had been non-violent until the Kisner murder. The defense also presented evidence that, subsequent to the Kisner murder, Dawson's prison conduct had improved significantly. Since his reincarceration, Dawson worked in various capacities at the Delaware Correctional Center, e.g., laundry, painting, and kitchen duty.

Finally, the defense presented testimony that, despite his tenuous relationship with his immediate family during his childhood, Dawson had developed close relationships with his aunt and sister. Those relatives testified that Dawson had offered to donate a kidney to a seriously ill cousin.[2]

### Ex Post Facto Application
### Delaware's Present Death Penalty Statute

■ The General Assembly amended the Delaware death penalty statute in the Fall of 1991. The new law was applicable "to all defendants tried or sentenced after its effective date." 68 *Del.Laws* ch. 189, § 6. A number of other capital defendants have previously raised several challenges regarding the 1991 amendments to the Delaware death penalty statute. *State v. Cohen,* Del.Supr., 604 A.2d 846 (1992).

The Superior Court certified ten questions of law to this Court in *Cohen,* pursuant to Article IV, Section 11(9) of the Delaware Constitution and Supreme Court Rule 41. *Id.* As a result of that proceeding, in which Dawson did not participate, this Court held that "the new law [is] valid in all respects and fully applicable to all the defendants." *Id.* at 848. This Court specifically rejected the contention that the application of the

---

**2.** The sentencing judge determined that Dawson had not established any diminished mental capacity.

amended death penalty statute to defendants, such as Dawson, who committed their crimes prior to the enactment of that law violated the *ex post facto* clause of Article I, Section 10 of the United States Constitution. *Id.* at 852–55.

In his first argument on appeal, Dawson asks this Court to overrule the *ex post facto* holding of its decision in *Cohen.* This Court has rejected similar applications in two prior opinions. *See Wright v. State,* Del.Supr., 633 A.2d 329, 343 (1993); *Red Dog v. State,* Del. Supr., 616 A.2d 298, 305–06 (1992). Dawson has cited no legal precedent or intervening changes in the law that would undermine the *ratio decidendi* of this Court's holding in *Cohen* on the *ex post facto* issue. Accordingly, we decline to overrule *Cohen.* We adhere to our *ex post facto* analysis and holding in that decision. *State v. Cohen,* 604 A.2d at 852–55. *Accord Wright v. State,* 633 A.2d at 343; *Red Dog v. State,* 616 A.2d at 305–06.

### Striking Jurors For Cause
### Death Penalty Reservations

Dawson's second contention on appeal relates to several jurors whom the Superior Court decided to strike for cause, after they had expressed personal reservations about the imposition of a sentence of death. Dawson argues that striking those jurors for cause was not mandated by the United States Constitution, as interpreted by the United States Supreme Court, because pursuant to the 1991 amendments to the Delaware death penalty statute the jury renders an advisory sentencing opinion that is not binding upon the Superior Court judge. 11 *Del.C.* § 4209(d). *See Wainwright v. Witt,* 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985). *See also Wright v. State,* Del.Supr., 633 A.2d 329, 338–39 (1993).

This Court rejected an identical argument for the first time in *State v. Cohen,* Del.Supr., 604 A.2d 846, 855–56 (1992):

Although not the final arbiters of punishment, jurors still play a vital and important role in the sentencing procedure. The jury sits as the conscience of the community in deciding whether to recommend life imprisonment or the death penalty. Any personal views which would prevent its members from impartially performing this solemn responsibility in accordance with the trial court's instructions are impermissible and contrary to law.

*Id.* at 856 (citation omitted). *See also Sanders v. State,* Del.Supr., 585 A.2d 117, 133 (1990) (quoting *Witherspoon v. Illinois,* 391 U.S. 510, 519, 88 S.Ct. 1770, 1775, 20 L.Ed.2d 776 (1968)); *DeShields v. State,* Del.Supr., 534 A.2d 630, 634 (1987), *cert. denied,* 486 U.S. 1017, 108 S.Ct. 1754, 100 L.Ed.2d 217 (1988). This Court recently rejected the same argument and decided to adhere to its holding in *Cohen. See Sullivan v. State,* Del.Supr., 636 A.2d 931, 938–939 (1994). Dawson has presented no basis for this Court to revisit its holdings in *Cohen* and *Sullivan* on this same issue.

### Curative Instruction
### Death Sentence Reference

Dawson's third contention is that his due process rights were violated when a witness for the State disclosed to the jury that he had previously received a death sentence. *See Bailey v. State,* Del.Supr., 521 A.2d 1069, 1076–78 (1987); *Hughes v. State,* Del.Supr., 490 A.2d 1034, 1044–47 (1985). *See also United States v. Williams,* 568 F.2d 464, 470–71 (5th Cir.1978). The record reflects that during the penalty hearing, Dawson's trial counsel called the records supervisor of the Delaware Correctional Center, Cathy Guessford ("Guessford"), to testify regarding Dawson's institutional record. During cross-examination, the prosecutor questioned Guessford regarding "the problem" in the records that prison social workers had identified. She replied "death sentence and escape risk." Dawson's trial attorney objected immediately.

At a sidebar conference, the defense moved for a mistrial, arguing that Guessford's answer informed the jury that Dawson had previously been sentenced to death for Kisner's murder. The trial judge, who had also just heard Guessford's response, concluded the jury would have inferred that Guessford was talking about the possibility of Dawson's receiving a death sentence, rather than that a death sentence had previously

been imposed. Therefore, the trial judge denied the motion for a mistrial.

Nevertheless, to make certain that the jurors did not either misconstrue or make any use of Guessford's testimony, the trial judge instructed the jury as follows:

> Members of the jury, the fact that a defendant faces a potential death sentence to be determined by the Court is not, in and of itself, either an aggravating circumstance or a mitigating circumstance to be considered by the jury. The last testimony of this witness is stricken. You are to disregard it.

Following that instruction, the defense motion for a mistrial was renewed. According to Dawson's attorney, the instruction was inadequate to cure the prejudice. The trial judge adhered to his determination that the words "death sentence and escape risk" indicated the *risk* of both a death sentence and an escape. The renewed motion for a mistrial was also denied.

■ The parties are in complete accord that a prior death sentence which has been vacated should *not* be mentioned during a resentencing hearing. *See Bailey v. State*, 521 A.2d at 1076–78; *Hughes v. State*, 490 A.2d at 1044–47. Such a reference is not only irrelevant but highly prejudicial. *See Hughes v. State*, 490 A.2d at 1044. In this case, however, it is not necessary to decide whether any reference to a prior death sentence mandates a mistrial *per se*. *Compare Sireci v. State*, Fla.Supr., 587 So.2d 450, 453, *cert. denied*, —— U.S. ——, 112 S.Ct. 1500, 117 L.Ed.2d 639 (1992).

The parties disagree, however, with respect to the meaning of Guessford's statement. The Superior Court concluded that Guessford's remark did *not* refer to a prior death sentence. Nevertheless, the trial judge delivered an immediate and unambiguous instruction to the jury that Guessford's testimony referred to the possibility of Dawson's receiving a death sentence. The trial judge also instructed the jurors to disregard Guessford's testimony.

■ Dawson argues that a mistrial should have been declared. A mistrial is mandated only when there are "no meaning-

ful and practical alternatives" to that remedy. *Bailey v. State*, 521 A.2d at 1077. Prejudicial error will normally be cured by the trial judge's instructions to the jury. *Sawyer v. State*, Del.Supr., 634 A.2d 377, 380 (1993); *Diaz v. State*, Del.Supr., 508 A.2d 861, 866 (1986). *Compare Weddington v. State*, Del.Supr., 545 A.2d 607, 614–15 (1988); *Bailey v. State*, 521 A.2d at 1077. Presumably, the jurors followed the Superior Court's instruction and disregarded Guessford's mention of a "death sentence." *See Claudio v. State*, Del.Supr., 585 A.2d 1278, 1280 (1991); *Kornbluth v. State*, Del.Supr., 580 A.2d 556, 560 (1990).

■ In this case, the Superior Court determined that Guessford's mention of a death sentence referred to the prospective risk of such a sentence and did not refer to the fact that Dawson had previously been sentenced to death. The record supports that conclusion. Consequently, we hold that the Superior Court properly exercised its discretion in deciding that a curative instruction was a meaningful and practical alternative to the declaration of a mistrial. *Sawyer v. State*, Del.Supr., 634 A.2d 377, 380 (1993). *Compare Weddington v. State*, 545 A.2d at 614–15; *Bailey v. State*, 521 A.2d at 1077.

### Jury Instructions
### Non–Statutory Aggravating Circumstances

■ Dawson's fourth contention in this appeal is that, as a matter of law, the Superior Court should have specifically instructed the jury that the State was required to prove any non-statutory aggravating circumstance "beyond a reasonable doubt," before it could be weighed against the mitigating circumstances found to exist. *See* 11 *Del.C.* § 4209(c)(3). Dawson did not raise any claim of error during the penalty hearing with respect to this aspect of the Superior Court's instructions to the jury. In the absence of an objection, the standard of appellate review is plain error. *Sanders v. State*, Del.Supr., 585 A.2d 117, 132–33 (1990). *See* Supr.Ct.R. 8.

Under the plain error standard of review, the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of

the trial process. Furthermore, the doctrine of plain error is limited to material defects which are apparent on the face of the record; which are basic, serious and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice.

*Wainwright v. State*, Del.Supr., 504 A.2d 1096, 1100 (citation omitted), *cert. denied*, 479 U.S. 869, 107 S.Ct. 236, 93 L.Ed.2d 161 (1986).

In two similar contexts, this Court has recently held that "[b]ecause the error alleged ... relates to the deficiency of instructions in the penalty phase of a capital murder trial, any such error would be of constitutional dimension. In view of the resulting imposition of the death sentence, any such error would clearly be fundamental in character and deprive the defendant of a substantial right." *Sullivan v. State*, Del.Supr., 637 A.2d 931, 943 (1994) (quoting *Wright v. State*, Del.Supr., 633 A.2d 329, 336 (1993)). Accordingly, we will examine Dawson's claim pursuant to the plain error standard of appellate review. *Id.; Wright v. State*, 633 A.2d at 336; *Sanders v. State*, 585 A.2d at 133.

The present Delaware death penalty statute requires the jury to advise the sentencing judge of its conclusion as to

> [w]hether, by a preponderance of the evidence, after weighing *all relevant evidence in aggravation or mitigation* which bears upon the particular circumstances or details of the commission of the offense and the character and propensities of the offender, *the aggravating circumstances found to exist outweigh the mitigating circumstances found to exist.*

11 *Del.C.* § 4209(c)(3)a.2 (emphasis added). A condition precedent to the foregoing analysis by the advisory jury is its determination that "the evidence shows *beyond a reasonable doubt*" the existence of one or more *statutory* aggravating circumstances. 11 *Del.C.* § 4209(c)(3)a.1 (emphasis added), 4209(e). The sentencing judge, taking into account the recommendation of the jury concerning these two issues, undertakes an identical analysis and has the ultimate sentencing responsibility. 11 *Del.C.* § 4209(d).

At the end of the penalty hearing in Dawson's case, the Superior Court judge instructed the jury, in pertinent part, as follows:

> *After* you consider whether the evidence shows *beyond a reasonable doubt* that one or more of the alleged *statutory aggravating circumstances* exists, you must also weigh and consider the mitigating circumstances and the aggravating circumstances, including but not limited to the statutory aggravating circumstances that you may already have found to exist [emphasis added].

\*　　\*　　\*　　\*　　\*　　\*

> You must then determine whether, based upon a preponderance of the evidence, the aggravating factors outweigh the mitigating factors. The side on which the greater weight of evidence is found is the side on which the preponderance of evidence exists.

This Court has previously rejected the argument that the 1991 amendments to the Delaware death penalty statute require a determination that the aggravating circumstances outweigh the mitigating circumstances beyond a reasonable doubt before a sentence of death can be imposed. *State v. Cohen*, Del.Supr., 604 A.2d 846, 851 (1992). When that argument was rejected in *Cohen*, this Court stated that the construction of the statute proposed by the defendants "confuse[d] the requirement, found in both the old and new laws, that *each aggravating factor* be proven beyond a reasonable doubt followed by the weighing of such factors against those in mitigation." *Id.* (emphasis added).

Dawson contends that the emphasized language from *Cohen* means that all aggravating circumstances, both statutory and *non-statutory*, must be established beyond a reasonable doubt. Therefore, Dawson argues that without such specificity the Superior Court's instruction to the jury constituted plain error. Dawson's challenge to the Superior Court's instruction to the jury, regarding the State's burden of proving the existence of a *non-statutory* aggravating circumstance, is

based upon his erroneous reading of this Court's opinion in *State v. Cohen*, 604 A.2d at 851.

Read in its context, the italicized language quoted from *Cohen* is a reaffirmation of the requirement, found in both the original and the amended Delaware death penalty statute, that "each [*statutory* ] aggravating factor" must be found to exist beyond a reasonable doubt. *Id.* This Court has consistently held that the Delaware death penalty statute does not impose upon the State, either expressly or impliedly, an evidentiary standard of proof beyond a reasonable doubt other than with respect to establishing the existence of at least one *statutory* aggravating circumstance. *See Red Dog v. State*, Del.Supr., 616 A.2d 298, 307 (1992) ("The Superior Court found that the State had also established substantial and reliable evidence with respect to numerous non-statutory aggravating circumstances....").

■ We hold that the Delaware death penalty statute does not require the State to present evidence establishing a *non-statutory* aggravating circumstance beyond a reasonable doubt before it may be "found to exist." 11 *Del.C.* § 4209(c)(3)a.2, (d)(1)b. The Superior Court's instructions to the jury on this matter were correct as a matter of law. *A fortiori*, Dawson has failed to demonstrate plain error.

### *Jury Instructions*
### *Mitigating Circumstances*

■ In a corollary argument, Dawson's next contention on appeal is that the Superior Court erred, as a matter of law, by giving the jury ambiguous instructions. According to Dawson, there was a reasonable likelihood the jurors would conclude that *Dawson* was required to prove the existence of any *mitigating* circumstances beyond a reasonable doubt. *See generally Boyde v. California*, 494 U.S. 370, 380, 110 S.Ct. 1190, 1198, 108 L.Ed.2d 316 (1990). Dawson did not raise any objection to this portion of the instructions in the Superior Court. Consequently, we will review this claim also for plain error. *See Wright v. State*, Del.Supr., 633 A.2d 329, 336 (1993); *Sanders v. State*, Del.Supr., 585 A.2d 117, 133 (1990).

Dawson argues that the Superior Court jury instructions were ambiguous because they included an explicit statement regarding the evidentiary standard of proof for statutory aggravating circumstances ("beyond a reasonable doubt"), but were silent with respect to the standard of proof for mitigating circumstances. Dawson contends that, in the absence of express guidance concerning the proper burden of proof to establish the existence of mitigating circumstances, this Court should assume that the jury applied the same "beyond a reasonable doubt" standard of proof that it was instructed to use in determining whether the State had established the existence of statutory aggravating circumstances. Dawson's contention is without merit.

The United States Supreme Court has set forth the constitutional standard for determining whether an ambiguous jury instruction in a death penalty proceeding violates the Eighth Amendment:

> We think the proper inquiry in such a case is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence.

*Boyde v. California*, 494 U.S. at 380, 110 S.Ct. at 1198. The Court also noted:

> Jurors do not sit in solitary isolation booths parsing instructions for subtle shades of meaning in the same way that lawyers might. Differences among them in interpretation of instructions may be thrashed out in the deliberative process, with commonsense understanding of the instructions in light of all that has taken place at the trial likely to prevail over technical hairsplitting.

*Id.* at 380–81, 110 S.Ct. at 1198. The Court held that a single jury instruction "must be viewed in the context of the overall charge." *Id.* at 378, 110 S.Ct. at 1196 (quoting *Cupp v. Naughten*, 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973)). *See Probst v. State*, Del.Supr., 547 A.2d 114, 119 (1988).

The Superior Court instructed the jury, in pertinent part, that:

The Delaware law specifies certain *statutory* aggravating circumstances, at least one of which must be found to exist *beyond a reasonable doubt* in order to render death an available punishment.

The law also permits you to consider any *other aggravating factors* not defined to be statutory aggravating circumstances *which may exist* in a particular case. The law does not specify mitigating circumstances but the defense may offer evidence relating to *any mitigating circumstances which it contends exists in a particular case.*

An aggravating circumstance is any factor relating to the crime or to the offender which tends to make the defendant's conduct more serious or the imposition of a penalty of death appropriate, including but not limited to any statutory aggravating circumstance [emphasis added].

The foregoing instructions, read as a whole, clearly distinguish (1) the advisory jury's determination of a statutory aggravating circumstance *beyond a reasonable doubt,* from (2) its analysis of non-statutory circumstances which simply "may exist," from (3) "*any* mitigating circumstances" which the defendant "*contends exists.*" These instructions in Dawson's case comport with the constitutional requirement that the jury "not be precluded from considering, *as a mitigating factor,* any aspect of a defendant's character or record and any of the circumstances of the offense *that the defendant proffers* as a basis for a sentence of less than death." *Lockett v. Ohio,* 438 U.S. 586, 604, 98 S.Ct. 2954, 2965–66, 57 L.Ed.2d 973 (1978) (plurality opinion) (second emphasis added). *See Eddings v. Oklahoma,* 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982). *See also Wright v. State,* 633 A.2d at 337.[3]

■ The record reflects that the Superior Court's instructions to the jury were unambiguous. Therefore, this case does not implicate an application of the *Boyde* standard for assessing ambiguous jury instructions in death penalty proceedings. Dawson has again failed to demonstrate any error. The unambiguous jury instructions in the case *sub judice* were completely consistent with the requirements of both the United States Constitution and the Delaware death penalty statute. *Boyde v. California,* 494 U.S. 370, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990). *See* 11 *Del.C.* § 4209. *See also Sullivan v. State,* Del.Supr., 636 A.2d 931, 942–947 (1994); *Wright v. State,* 633 A.2d at 335–39.

### *Death Penalty Statutorily Mandated Review*

■ We now undertake our statutorily mandated review of the imposition of the death penalty in Dawson's case. *Wright v. State,* Del.Supr., 633 A.2d 329, 339 (1993). *See also Riley v. State,* Del.Supr., 496 A.2d 997, 1026 (1985), *cert. denied,* 478 U.S. 1022, 106 S.Ct. 3339, 92 L.Ed.2d 743 (1986); *Flamer v. State,* Del.Supr., 490 A.2d 104, 137–45 (1983), *cert. denied,* 464 U.S. 865, 104 S.Ct. 198, 78 L.Ed.2d 173 (1983), *and cert. denied,* 474 U.S. 865, 106 S.Ct. 185, 88 L.Ed.2d 154 (1985). Although the review by this Court which the statute requires is limited, that review is not perfunctory. *Wright v. State,* 633 A.2d at 339; *Pennell v. State,* Del.Supr., 604 A.2d 1368, 1375 (1992). *See Dobbert v. Florida,* 432 U.S. 282, 295, 97 S.Ct. 2290, 2299, 53 L.Ed.2d 344 (1977). Pursuant to Delaware's death penalty statute, a sentence of death may be imposed only in accordance with the bifurcated procedure prescribed by 11 *Del.C.* § 4209. Section 4209(g)(2) provides as follows:

(2) The Supreme Court shall limit its review under this section to the recommendation on and imposition of the penalty of death and shall determine:

a. Whether, considering the totality of evidence in aggravation and mitigation which bears upon the particular circumstances or details of the offense and the character and propensities of the offender, the death penalty was either arbitrarily or capriciously imposed or recommended, or disproportionate to the

---

3. *Compare Walton v. Arizona,* 497 U.S. 639, 650, 110 S.Ct. 3047, 3055, 111 L.Ed.2d 511 (1990) (plurality opinion) ("[A] defendant's constitution-al rights are not violated by placing on him the burden of proving mitigating circumstances sufficiently substantial to call for leniency.").

penalty recommended or imposed in similar cases arising under this section.

b. Whether the evidence supports the judge's finding of a statutory aggravating circumstance as enumerated in subsection (e) of this section and, where applicable, § 636(a)(2)–(7) of this title.

11 *Del.C.* § 4209(g)(2). In performing its mandatory statutory review, this Court is always cognizant that "death as a punishment is unique in its severity and irrevocability." *Pennell v. State,* 604 A.2d at 1375 (quoting *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972)). *See also Wright v. State,* 633 A.2d at 339; *Red Dog v. State,* Del.Supr., 616 A.2d 298, 306 (1992).

This Court has traditionally commenced its mandatory statutory review by initially addressing subparagraph (b) of Section 4209(g). *Pennell v. State,* 604 A.2d at 1375. That subsection requires this Court to examine the evidence in the record to determine whether it supports the findings of the Superior Court judge which relate to the establishment of statutory aggravating circumstances. 11 *Del.C.* § 4209(e). Thereafter, two additional inquiries are required by subparagraph (a) of Section 4209(g)(2): first, whether the Superior Court judge's imposition of the death penalty was either arbitrary or capricious; and second, whether the death penalty imposed was disproportionate to the penalty imposed in similar cases arising under this statute. *Pennell v. State,* 604 A.2d at 1375; *Riley v. State,* Del.Supr., 496 A.2d 997, 1026 (1985). "Each question requires a consideration of the totality of evidence in aggravation and mitigation which bears upon the particular circumstances or details of the offense and the character and propensities of the offender." 11 *Del.C.* § 4209(g)(2); *Pennell v. State,* 604 A.2d at 1375.

*Wright v. State,* 633 A.2d at 339 (quoting *Red Dog v. State,* 616 A.2d at 306–07). *Accord Sullivan v. State,* Del.Supr., 636 A.2d 931, 949 (1994). *See generally Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976).

■ Addressing subparagraph b of Section 4209(g)(2) first, the Dawson jury and the judge both found the existence of three statutory aggravating circumstances. The first statutory aggravating circumstance found by the judge and jury was that the murder was committed by a person who had escaped from a place of confinement. 11 *Del.C.* § 4209(e)(1)a. During the penalty hearing, the Superior Court properly instructed the jury that this statutory aggravating circumstance had been established beyond a reasonable doubt, as a matter of law, by virtue of Dawson's conviction at trial. *Compare Dawson v. State,* Del.Supr., 581 A.2d 1078, 1107 (1990).

The second statutory aggravating circumstance found to exist by the judge and the jury was that the murder of Kisner occurred during the commission of a burglary and/or robbery. 11 *Del.C.* § 4209(e)(1)j. The Superior Court also properly instructed the jury that Dawson's felony murder conviction had established this statutory aggravating circumstance, as a matter of law. *Compare Dawson v. State,* 581 A.2d at 1107 (*citing Deputy v. State,* Del.Supr., 500 A.2d 581, 602 (1985), *cert. denied,* 480 U.S. 940, 107 S.Ct. 1589, 94 L.Ed.2d 778 (1987)).

The third statutory aggravating circumstance was that the murder was committed for pecuniary gain. 11 *Del.C.* § 4209(e)(1)o. This issue was submitted to the jury. The jury found, by a vote of eight to four, that it had been established beyond a reasonable doubt. The trial judge agreed. However, the trial judge stated that he had "chosen not to place independent weight on this factor that Dawson committed the murder for pecuniary gain because the Court has already found that the murder was committed while the defendant was engaged in the commission of robbery involving the same property." *Compare Dawson v. State,* 581 A.2d at 1107–08.

The record reflects that the evidence supports the judge's findings that three of the statutory aggravating circumstances enumerated in Section 4209(e) were established beyond a reasonable doubt in Dawson's case.

*Death Penalty*
*Not Arbitrary or Capricious*

Two additional inquiries are required of this Court by subparagraph a of Section 4209(g)(2): first, whether the judge's imposition of the death penalty was either arbitrary or capricious, and second, whether the death penalty imposed was disproportionate to the penalty imposed in similar cases arising under the statute. *Dawson v. State*, 581 A.2d at 1108; *Riley v. State*, 496 A.2d at 1026. Each question requires a consideration of the totality of evidence in aggravation and mitigation which bears upon the particular circumstances or details of the offense and the character and propensities of the offender. 11 *Del.C.* § 4209(g)(2)a; *Red Dog v. State*, 616 A.2d at 306–07.

The present Delaware death penalty statute requires both the jury and judge to weigh all relevant aggravating and mitigating circumstances. 11 *Del.C.* § 4209(c)(3), (d). *See Sullivan v. State*, 636 A.2d at 949. The *judge* must ultimately determine, by a preponderance of the evidence, that the aggravating circumstances outweigh the mitigating circumstances in order to impose a death sentence. 11 *Del.C.* § 4209(d). The Superior Court judge concluded that the statutory aggravating circumstances, which he found to exist beyond a reasonable doubt, and the non-statutory aggravating circumstances "heavily" outweighed the mitigating circumstances which he found to exist. In concluding his sentencing analysis, the Superior Court judge stated:

> By any standard acceptable to a civilized society, Dawson's post-escape conduct against his bound and defenseless victim was exceedingly depraved, brutal, and vicious. This murder was unprovoked, unnecessary, and senseless. Dawson has demonstrated throughout his life an unwillingness to live by the rules which govern a civilized society. Although the Court has found certain mitigating circumstances as contended by the defense, they are clearly and heavily outweighed by the statutory and non-statutory aggravating circumstances in this case. Under the totality of the circumstances present, the Court

agrees with the unanimous jury recommendation in this case.

▮▮▮ The Superior Court judge expressed the complete basis for his decision to sentence Dawson to death in a fifteen-page written opinion. The record reflects that the Superior Court judge carefully considered the totality of the evidence in aggravation and mitigation, which related to the particular circumstances of the murder of Kisner, as well as to the character and propensities of Dawson. 11 *Del.C.* § 4209(g)(2)a; *Wright v. State*, 633 A.2d at 342. *See Red Dog v. State*, 616 A.2d at 310; *Pennell v. State*, 604 A.2d at 1375. The record reflects that the Superior Court's decision to impose the death sentence was "the product of a deliberate, rational and logical deductive process." *Red Dog v. State*, 616 A.2d at 310 (citing *Pennell v. State*, 604 A.2d at 1376). *See also Wright v. State*, 633 A.2d at 343. After a careful review of the entire record, this Court has concluded that the sentence of death was not imposed upon Dawson by the Superior Court either arbitrarily or capriciously. 11 *Del.C.* § 4209(g)(2)a.

*Death Penalty*
*Proportionality Review*

▮▮▮ The final question that this Court must answer in its mandatory statutory review is whether the Superior Court judge's imposition of the death penalty upon Dawson was disproportionate to the penalty imposed in other cases. In answering that inquiry, this Court has reviewed the "universe" of cases established in *Flamer, Bailey, Riley, Deputy, DeShields, Dawson, Pennell, Red Dog, Wright* and *Sullivan,* as well as all subsequent cases falling therein (Appendix I). *Sullivan v. State*, Del.Supr., 636 A.2d 931, 950 (1994) (citing cases). *See Wright v. State*, Del.Supr., 633 A.2d 329 (1993); *Red Dog v. State*, Del.Supr., 616 A.2d 298 (1992); *Pennell v. State*, Del.Supr., 604 A.2d 1368 (1992). The "universe" of cases is comprised of those First Degree Murder cases which have included a penalty hearing and in which the sentence has become final, either without or following a review by this Court. *See Wright v. State*, 633 A.2d at 342.[4] *See also Red Dog v. State*, 616 A.2d at 311.

4. In *Wright v. State,* we noted that the 1991 revisions to the Delaware death penalty statute

In prior cases involving proportionality review, this Court has consistently observed that "[a] definitive comparison of the 'universe' of cases is almost impossible." *Red Dog v. State,* 616 A.2d at 311 (citing *Pennell v. State,* 604 A.2d at 1376). *See also Sullivan v. State,* 636 A.2d at 950; *Wright v. State,* 633 A.2d at 342. Nevertheless, we have compared Dawson's death sentence with the penalties imposed in all First Degree Murder cases which have included a death penalty hearing. We have considered objective factors such as the gravity of the offense, the circumstances of the crime, and the harshness of the penalty. *Wright v. State,* 633 A.2d at 342. *See Red Dog v. State,* 616 A.2d at 311 (citing *Solem v. Helm,* 463 U.S. 277, 290–92, 103 S.Ct. 3001, 3009–11, 77 L.Ed.2d 637 (1983)).

■ Dawson, like other defendants sentenced to death in Delaware, was found guilty of committing an unprovoked, cold-blooded murder of a person who lacked the ability to defend herself. *Sullivan v. State,* 636 A.2d at 950–951; *Wright v. State,* 633 A.2d at 343; *Red Dog v. State,* 616 A.2d at 311; *Pennell v. State,* 604 A.2d at 1377. Dawson's murder victim, like those of *Red Dog* and *Pennell,* was rendered helpless by binding before her death. *Red Dog v. State,* 616 A.2d at 311; *Pennell v. State,* 604 A.2d at 1377. The murder committed by Dawson, like the murder committed by Billie Bailey, occurred while Dawson was an escapee from a correctional institution. *Bailey v. State,* Del.Supr., 503 A.2d 1210, 1211 (1984).

The record in Dawson's case reflects the existence of three statutory aggravating circumstances, significant non-statutory aggravating circumstances, and, according to the sentencing judge, "no mitigating circumstances which bear upon the particular circumstances or details of the commission of the murder." *See Pennell v. State,* 604 A.2d at 1377. *See also Wright v. State,* 633 A.2d at 343; *DeShields v. State,* Del.Supr., 534 A.2d 630, 649 (1987), *cert. denied,* 486 U.S.

1017, 108 S.Ct. 1754, 100 L.Ed.2d 217 (1988); *Deputy v. State,* Del.Supr., 500 A.2d 581, 602 (1985), *cert. denied,* 480 U.S. 940, 107 S.Ct. 1589, 94 L.Ed.2d 778 (1987); *Riley v. State,* Del.Supr., 496 A.2d 997, 1027 (1985), *cert. denied,* 478 U.S. 1022, 106 S.Ct. 3339, 92 L.Ed.2d 743 (1986). Dawson's murder of Kisner, like the murders in *Red Dog, Pennell,* and *DeShields,* was an execution-type slaying of a helpless victim in cold blood. *See Red Dog v. State,* 616 A.2d at 311; *Pennell v. State,* 604 A.2d at 1377; *DeShields v. State,* 534 A.2d at 649. Therefore, Dawson's case fits the pattern of other cases in which the death penalty has not only been imposed but actually administered in Delaware. *Red Dog v. State,* 616 A.2d at 311; *Pennell v. State,* 604 A.2d at 1377; *DeShields v. State,* 534 A.2d at 649. Accordingly, the Superior Court judge's imposition of a sentence of death upon Dawson was not disproportionate to the sentences imposed on other defendants in the relevant "universe" of cases involving death penalty hearings in Delaware. 11 *Del.C.* § 4209(g)(2)a.

### Conclusion

The record supports the Superior Court judge's finding that three statutory aggravating circumstances were established beyond a reasonable doubt. 11 *Del.C.* § 4209(e), (g)(2)b. This Court has carefully reviewed the entire record and has concluded that the death sentence imposed upon Dawson was not imposed either arbitrarily or capriciously. We have also concluded that Dawson's death sentence is not comparatively disproportionate to the sentences imposed in other First Degree Murder cases that have proceeded to a penalty hearing pursuant to the Delaware death penalty statute. 11 *Del.C.* § 4209(g)(2)a. *See Wright v. State,* 633 A.2d at 343; *Red Dog v. State,* 616 A.2d at 312; *Pennell v. State,* 604 A.2d at 1378. This Court has determined that the facts supporting the sentence of death imposed upon Dawson by the Superior Court judge for the

---

removed the decisionmaking authority from the jury and placed it in the hands of the sentencing judge. 633 A.2d at 342 n. 21. However, pre–1991 jury decisions are nevertheless pertinent to our proportionality analysis because those cases "reflect a jury consensus on the appropriateness

of imposing the death penalty." *Id.* Also, "in all cases in which the death sentence was imposed, this Court conducted proportionality review." *Id. Accord Sullivan v. State,* 636 A.2d at 950 n. 11.

murder of Madeline Kisner "are so clear and convincing that virtually no reasonable person could differ." *Red Dog v. State*, 616 A.2d at 312 (quoting *Pennell v. State*, 604 A.2d at 1378). Accordingly, the judgments of the Superior Court, sentencing Dawson to death for the murder of Madeline Kisner, are **AFFIRMED.**

The matter is remanded to Superior Court for further proceedings in accordance with this opinion. This Court's order of April 8, 1993, staying the execution of Dawson's death sentence, shall terminate upon the issuance of this Court's mandate. The Clerk of this Court is directed to cause a copy of this opinion to be hand-delivered forthwith to the attorneys for the parties and to the Commissioner of the Department of Correction.

## APPENDIX I

### FIRST DEGREE MURDER CASES THAT WENT TO PENALTY HEARINGS

#### 1985 to date

Appendix A to *Wright v. State*, Del.Supr., 633 A.2d 329, 344–45 (1993) is incorporated herein by reference, subject to the following changes and additions.

Case Name: David F. Dawson *
Case No.: IK86–0024; IK87–01–0841; 0843, 0845
County: New Castle (venue changed)
Sentence: Death—present proceeding

Case Name: Jose Rodriguez
Case No.: IN93–020–1121

County: New Castle
Sentence: Life Imprisonment

Case Name: Willie G. Sullivan
Case No.: IK–01–0192 thru 0196; IK92–02–0001; IK92–03–0022
County: Kent
Sentence: Death

Case Name: Charles H. Trowbridge
Case No.: IK91–07–0175, IK91–09–0032 thru 0034
County: Kent [5]
Sentence: Life Imprisonment

Case Name: Jermaine M. Wright
Case No.: IN91–04–0147 thru 1953
County: New Castle
Sentence: Death

The "universe" of cases is comprised of those First Degree Murder cases which have gone to a penalty hearing and in which the sentence has become final, either without or following a review by this Court. An asterisk marks those capital murder cases which are not included in the defined "universe" of cases.

---

**5.** The appendices in *Wright* and *Red Dog v. State*, Del.Supr., 616 A.2d 298, 315 (1992), inadvertent-

ly indicated that Trowbridge was sentenced in New Castle County.