Nelson Walter SHELTON, Defendant Below, Appellant,

v.

STATE of Delaware, Plaintiff Below, Appellee.

No. 165, 1993.

Supreme Court of Delaware.

Submitted: Dec. 15, 1994.
Decided: Jan. 4, 1995.

Nelson Shelton, pro se (argued).

Joseph M. Bernstein (argued), Wilmington, court appointed by Order dated May 19, 1994, to protect appellant's interests in the automatic appeal.

Eugene J. Maurer, Jr., Wilmington, standby counsel for appellant.

Richard E. Fairbanks, Jr. (argued), Dept. of Justice, Wilmington, for appellee.

Before VEASEY, C.J., WALSH, HOLLAND, HARTNETT and BERGER, JJ. (constituting the Court en banc).

VEASEY, Chief Justice.

In this appeal, we consider the April 30, 1993 sentence of death imposed by the Supe-

rior Court on defendant below-appellant Nelson Shelton ("Nelson"),[1] for the first degree felony murder of Wilson Mannon ("Mannon"). Although Nelson has expressed his desire to be executed and, therefore, has not pursued a direct appeal, an automatic appeal was docketed as to his sentence. It is alleged that the imposition of the death sentence violated both 11 *Del.C.* § 4209(g), which requires that the sentence imposed be proportional to sentences received in similar crimes under that section, and the Eighth Amendment to the United States Constitution. After reviewing the record and the applicable authorities, we find that the Superior Court did not err, and therefore, we **AFFIRM** the sentence imposed by the Superior Court.

## I. PROCEDURAL HISTORY

On May 3, 1993, following notification of the Sentencing Decision, this Court docketed an automatic appeal from the death sentence imposed, and issued a stay of execution.[2] On May 14, 1993, Nelson filed a plenary appeal from the convictions and sentence, which was consolidated with the automatic appeal for purposes of further proceedings in this Court.

Sometime after Nelson's counsel filed the opening brief in support of the consolidated

appeal, Nelson wrote directly to this Court requesting (1) that his appeal be dismissed, (2) that no further efforts be taken on his behalf to litigate his conviction and sentence, and (3) that he be executed as soon as possible. Nelson also filed an affidavit seeking to discharge his attorney and proceed *pro se.*

After the Superior Court conducted an evidentiary hearing,[3] this Court approved and adopted the Superior Court's findings that:

1. Nelson's request to proceed *pro se* should be granted, with the proviso that R. David Favata, Esquire ("Favata"),[4] be appointed as "stand-by" counsel for Nelson;

2. Nelson's direct appeal (No. 172, 1993) should be dismissed pursuant to Supr. Ct.R. 29; and

3. "[S]eparate counsel ... [b]e appointed to protect [Nelson's] interests in the automatic appeal ... and to ... file a new brief in support of the automatic appeal."

Nelson's case then was stayed pending the outcome of Outten's and Steven's appeals. Those appeals having been decided, the stay was lifted and Nelson's automatic appeal followed. Joseph M. Bernstein, Esquire, was

---

1. Nelson was tried jointly in Superior Court with his brother, Steven Shelton ("Steven"), and his cousin Jack Outten ("Outten"). All three were convicted and sentenced to death. Nelson's appeal was severed from the appeals of Steven and Outten. Steven's and Outten's appeals have been decided and their sentences affirmed. *See Outten v. State,* Del.Supr., 650 A.2d 1291 (1994); *S. Shelton v. State,* Del.Supr., 650 A.2d 1291 (1994).

2. *See supra* note 1 with regard to Steven's and Outten's appeal.

3. As part of its evidentiary hearing, the Superior Court found that Nelson is mentally competent to make decisions concerning the imposition of the death sentence and the cessation of his direct appeal. *See N. Shelton v. State,* Del.Super., No. IN–92–01–1144 to 1158, slip op. at 4, Herlihy, J. (Apr. 4, 1994) (*on remand from* Del.Supr., Nos. 165 and 172, 1993 (consolidated), Walsh, J. (Mar. 4, 1994)). The court relied in part on (1) the sentencing court's determination that Nelson made a knowing, intelligent and voluntary decision not to present any mitigating evidence; (2) a February 26, 1993 letter written by Dr. Stephen

Mechanick ("Mechanick"), Nelson's examining psychiatrist, reflecting his opinion that Nelson was competent then to make that decision; and (3) a March 23, 1994 letter written by Mechanick, detailing his finding that Nelson is competent to make decisions regarding the death penalty and the cessation of his direct appeal. Additionally, the Superior Court found that neither Timothy N. Collins, Esquire, who represented Nelson for nearly two years, nor Bernard J. O'Donnell, who represented Nelson on appeal, has shown any signs of lack of professional competence. *Id.* at 5.

4. Favata was one of Nelson's trial attorneys in the Superior Court below. Due to a conflict, Favata withdrew as stand-by counsel in this Court. He was replaced by Eugene J. Maurer, Jr., Esquire. Mr. Maurer advised this Court at oral argument on December 15, 1994: "I have spoken with Mr. Shelton at Delaware Correctional Center and spent a fair amount of time with him this morning, and he seems to know what he is doing. I have no question about that."

subsequently appointed to fill the role of "separate counsel."

Although Nelson has expressed a desire to abandon further litigation and be executed as soon as possible,[5] this Court has found that "such waiver [is] precluded because of the statutory mandate in Delaware which provides: 'Whenever the death penalty is imposed, and upon the judgment becoming final in the trial court, the recommendation on and the imposition of that penalty *shall* be reviewed on the record by the Delaware Supreme Court.'" *Pennell v. State*, Del.Supr., 604 A.2d 1368, 1370–71 (1992) (quoting 11 *Del.C.* § 4209(g)(1)) (emphasis in opinion). Accordingly, we have not considered Nelson's personal position in this automatic appeal. *See Red Dog v. State*, Del.Supr., 616 A.2d 298, 300 nn. 2, 3 (1992).

## II. FACTS

The companion cases of *Outten v. State*, Del.Supr., 650 A.2d 1291 (1994), and *S. Shelton v. State*, Del.Supr., 650 A.2d 1291 (1994), contain a detailed recitation of the facts in this matter. Only a brief summary of the relevant facts is necessary for purposes of this opinion.

On January 11, 1992, Nelson, his girlfriend Christina Gibbons ("Gibbons"), Steven and Outten left Fat Boys Bar in New Castle with Mannon. Mannon's body later was discovered along a road in a deserted area of East Wilmington at approximately 11:00 a.m. on January 12, 1992. Mannon was lying on his back with his legs crossed and the top of his head completely shattered. His pockets were turned inside-out, and loose change, his empty wallet and his identification cards were scattered nearby. Additionally, a broken hammer handle rested a few feet away from Mannon's body and the hammer head was found near a fence along the road.

New Castle County police questioned Nelson and Gibbons later on the morning of January 12 regarding an unrelated matter. During questioning, Gibbons told the police that Outten had killed an old man named "Willie" by hitting him with a sink,[6] that Steven had kicked the old man, and that Nelson, though present, had not gotten involved. In another statement that day, Gibbons stated that Outten had also beaten Mannon and hit him with a hammer before using the sink. Nelson admitted that he swung a hammer at Mannon.

Outten, Nelson and Steven were tried in a joint trial in the Superior Court. The State introduced considerable scientific evidence linking the defendants to the crime, including traces of blood on the defendants' clothing.[7] The State's principal eyewitness was Gibbons, who initially testified that Steven did not participate in the killing, but later admitted that she had lied and that all three defendants had been involved in Mannon's murder.

At the conclusion of the trial, the jury found all three defendants guilty of first degree felony murder and related offenses. In a separate penalty hearing, the jury recommended that all three defendants be sentenced to death. The Superior Court accepted this recommendation and sentenced each defendant to death.[8]

---

**5.** The Administrative Directive No. 88 requirement that an execution date be scheduled not less than 90 days, nor more than 120 days from the date of resentencing may be waived by a defendant.

**6.** Originally, Gibbons told police that Outten used a sink to kill Mannon, but later Gibbons admitted that the actual instrument might have been a washing machine top.

**7.** The State showed that traces of human blood containing the protein type phosphoglucomutase two minus, two plus were found on Nelson's clothing. The victim's blood contained that protein type; Nelson's blood did not. Only two percent of the Caucasian population have blood containing that protein type.

**8.** The court instructed the jury:

While the Court has the ultimate responsibility for imposing sentence on the defendant, your role as jurors in the sentencing procedure is, nevertheless, both extremely vital and important. Furthermore, the fact that your recommendation in this case does not have to be unanimous should not influence you to act hastily or without due regard to the importance of these proceedings. You will provide the Court as the conscience of the community with an advisory opinion on what the jury believes the evidence has shown with regard to the appropriate penalty in this case as to each defendant. You must not take this responsibility lightly. Although the Court is not bound by your recommendation, your recommended an-

**4**

### III. CONSTITUTIONAL AND STATUTORY REVIEW

It is alleged that the imposition of the death sentence violated both the Eighth Amendment to the United States Constitution, and 11 *Del.C.* § 4209(g), which requires that the sentence imposed be proportional to sentences received in similar crimes under that section.

### A. EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION

 The Eighth Amendment to the United States Constitution requires that the imposition of the death penalty be based upon the personal culpability of a defendant. *See Enmund v. Florida,* 458 U.S. 782, 798, 102 S.Ct. 3368, 3377, 73 L.Ed.2d 1140 (1982) ("[T]he focus ha[s] to be on [the defendant's] culpability, not on that of those who committed the robbery and shot the victims, for we insist on individualized consideration as a constitutional requirement in imposing the death sentence"); *Tison v. Arizona,* 481 U.S. 137, 156, 107 S.Ct. 1676, 1687, 95 L.Ed.2d 127 (1987) ("A critical facet of the individualized determination of culpability required in capital cases is the mental state with which the defendant commits the crime"); *see also Lawrie v. State,* Del.Supr., 643 A.2d 1336, 1347 (1994) ("[T]he principal purposes of capital punishment—deterrence and retribution—are not served by executing a defendant who neither participated in the killing nor intended to kill") (citing *Enmund,* 458 U.S. at 798–800, 102 S.Ct. at 3377–78). The death penalty may be constitutionally imposed, even in the absence of an intent to kill, if the defendant played a major role in the felony and acted with reckless disregard for human life. *Lawrie,* 643 A.2d at 1347. The United States Supreme Court noted:

swers to the questions provided will be given great weight by the Court in its final determination of the appropriate sentence as to each defendant.

\* \* \* \* \* \*

I want to emphasize that even if you do not find the existence of a statutory aggravating circumstance, you nevertheless may conclude, based on a preponderance of the evidence, that the mitigating circumstances found to exist outweigh the aggravating circumstances found to exist.

[A] number of state courts have interpreted *Enmund* to permit the imposition of the death penalty in such aggravated felony murders. We do not approve or disapprove the judgments as to proportionality reached on particular facts of these cases, but we note the apparent consensus that substantial participation in a violent felony under circumstances likely to result in the loss of innocent human life may justify the death penalty even absent an "intent to kill."

\* \* \* \* \* \*

[T]he reckless disregard for human life implicit in knowingly engaging in criminal activities known to carry a grave risk of death represents a highly culpable mental state, a mental state that may be taken into account in making a capital sentencing judgment when that conduct causes its natural, though also not inevitable, lethal result.

*Tison,* 481 U.S. at 154, 157–58, 107 S.Ct. at 1686, 1688.

 Counsel claims that under *Enmund* and its progeny, the trial judge's instructions to the jury were flawed. Counsel maintains that the jury instructions "could have led a reasonable juror to conclude that Nelson Shelton could be found guilty of both intentional murder as an accomplice and felony murder as an accomplice without ever finding that Nelson Shelton specifically intended to kill." Counsel relies on both Delaware law and the United States Supreme Court cases of *Enmund, Cabana*[9] and *Tison* for the proposition that the jury is required to find that Nelson Shelton either actually killed Mannon, or intended to kill Mannon. In *Cabana,* the United States Supreme Court stated that:

Penalty Hearing Jury Instructions at 2–3, 7. The jury voted 8–4 that aggravating circumstances outweighed mitigating circumstances with regard to Nelson, 8–4 that aggravating circumstances outweighed mitigating circumstances with regard to Steven, and 7–5 that aggravating circumstances outweighed mitigating circumstances with regard to Outten.

9. *Cabana v. Bullock,* 474 U.S. 376, 106 S.Ct. 689, 88 L.Ed.2d 704 (1986).

[T]o the extent that *Enmund* recognizes that a defendant has a right not to face the death penalty, absent a particular factual predicate, it also implies that the State's judicial process leading to the imposition of the death penalty must at *some* point provide for a finding of that factual predicate.

*Cabana v. Bullock,* 474 U.S. 376, 390–91, 106 S.Ct. 689, 699, 88 L.Ed.2d 704 (1986).

Although counsel recognizes that neither *Enmund* nor *Cabana* interprets the Eighth Amendment as specifically requiring a jury to find that Nelson intended to kill Mannon, counsel nonetheless maintains that under Delaware state law, Nelson has a liberty interest in having a jury make the necessary factual findings regarding intent. Counsel cites *Claudio v. State,* Del.Supr., 585 A.2d 1278, 1296 (1991): "The framers of the [Delaware] Constitution of 1776 ... declared (1 Del.Laws, Appendix 81) it to be a fundamental rule 'that trial by jury of facts where they arise is one of the greatest securities of the lives, liberties and estates of the people.'" (quoting *Wilson v. Oldfield,* 1 Del.Cas. 622, 624–27 (1818)).

Counsel's assertions are without merit. With regard to counsel's claim that the jury might have found Nelson guilty as an accomplice, this Court's decision in *Deputy v. State,* Del.Supr., 500 A.2d 581 (1985), *cert. denied,* 480 U.S. 940, 107 S.Ct. 1589, 94 L.Ed.2d 778 (1987), negates that argument. In *Deputy,* the defendant had been convicted of killing two individuals during a robbery and sentenced to death. He appealed his sentence claiming that it violated the Eighth Amendment to the United States Constitution. He alleged, like counsel in this case, that the jury may have relied solely on accomplice liability to find him guilty, and thus, under *Enmund,* his sentence to death was unconstitutional. The Court found, however, that *Enmund* did not prohibit the imposition of the death penalty. The Court reasoned:

Unlike Enmund, [who waited in the getaway car while the killing took place], Deputy was admittedly present at the killings, and, at the very least, did nothing to stop

them. There were 145 wounds inflicted upon the two victims, two weapons were used in the murders, and Deputy had one of the victims' watch and wallet the morning after the killings. These factors indicate that Deputy was not solely a participant in the underlying felony, but was instead present during, and involved in, the actual murders.

*Id.* at 599; *see also Deputy v. Taylor,* 3d Cir., 19 F.3d 1485, 1497–98, *cert. denied, sub nom., Stanley v. Taylor,* —— U.S. ——, 114 S.Ct. 2730, 129 L.Ed.2d 853 (1994).

In this case, the trial judge found that not only was Nelson present at the scene of Mannon's murder, but he also wielded the hammer and struck Mannon in the back of the head. This finding is supported by the evidence [10] and we defer to the trial court's determination. Additionally, Nelson was wearing Mannon's gold rings when apprehended later that day. He was not merely a participant in the underlying robbery, "but was instead present during, and involved in, the actual murders." *Deputy,* 500 A.2d at 599.

■ Counsel's second contention is equally unavailing. Under 11 *Del.C.* § 4209(d), the judge determines the sentence in a capital case. The jury deliberates on and recommends to the court answers to: (1) whether the evidence shows beyond a reasonable doubt the existence of at least one aggravating circumstance, and (2) whether the aggravating circumstances outweigh the mitigating circumstances found to exist. 11 *Del.C.* § 4209(c)(3)(a). Even as to these matters, the jury makes a recommendation only—the ultimate decision is made by the trial court. *State v. Cohen,* Del.Supr., 604 A.2d 846, 851–52 (1992).

Although the jury plays an important role in the sentencing process, neither the Delaware State Constitution, nor case law provides that it is to assume the dominant role in sentencing, *i.e.,* the accused is not entitled to a jury trial with regard to sentencing. *Id.* "[T]hat principle[, of a jury not passing sen-

---

10. During questioning, Nelson admitted swinging the hammer at Mannon. This was read into

evidence during Nelson's trial.

tence,] is so deeply rooted in precedent as to be immutable, since this Court has consistently held that, absent express statutory authorization, the jury should not even consider the sentencing consequences which flow from a guilty verdict." *Id.* (citing *Boatson v. State,* Del.Supr., 457 A.2d 738, 741 (1983); *Smith v. State,* Del.Supr., 317 A.2d 20, 25–26 (1974)); *see also Claudio,* 585 A.2d at 1290–98 (right to trial by jury preserved only as it existed when common law was imported from England in 1776).[11]

Here, the jury found that four aggravating circumstances were present,[12] and that these factors outweighed any mitigating factors. They recommended that Nelson be sentenced to death. As part of its sentencing decision, the trial court relied on the jury's recommendation, and the evidence that showed that Nelson "actually killed" Mannon. Accordingly, Nelson's sentence was imposed fairly and did not violate his rights under either the Eighth Amendment to the United States Constitution or any state law.

## B. SECTION 4209 REVIEW

Finally, this Court must ensure that the imposition of the death sentence with regard to Nelson is proportionate in relation to similar cases.[13] The analysis here is substantially similar to that performed in *Outten v. State* and *Shelton v. State.* Title 11 *Del.C.* § 4209(g)(2)(a) requires that there be some proportionality between the crime committed and the blameworthiness of the defendant,[14]

and mandates that the Supreme Court determine:

> Whether, considering the totality of evidence in aggravation and mitigation which bears upon the particular circumstances or details of the offense and the character and propensities of the offender, the death penalty was either arbitrarily or capriciously imposed or recommended, or disproportionate to the penalty recommended or imposed in similar cases arising under this section.

In making this determination, this Court will scrutinize those first degree murder cases governed by the 1991 amendment to the death penalty statute which have continued to a penalty hearing and where the sentence has become final. In addition, the Court may consider those cases decided under the law in effect from 1985 to 1991 which the Court deems pertinent to the case before it. *Wright v. State,* Del.Supr., 633 A.2d 329, 342 (1993).

In view of this Court's decision in *Lawrie,* 643 A.2d at 1350, it is essential to distinguish between those cases governed by 11 *Del.C.* § 4209 as it existed before the 1991 amendment which became effective on November 4, 1991 in 68 Del.Laws Ch. 189 (the "pre–1991 cases"), and those cases governed by the current provisions of Section 4209 after November 4, 1991 (the "post–1991 cases"). In *Lawrie,* we held that the changes in the statutory scheme in 1991 created such a "significant dissimilarity between the pre–1991 cases and the post–1991 cases" that the for-

---

11. Counsel's argument that the state constitution imposes a right to a jury trial in such a situation is also shown to be in error by the Court's discussion of the Mercy Statute in *State v. Dickerson,* Del.Supr., 298 A.2d 761, 764 n. 6 (1973) (Mercy Statute, which permits the sentencing jury to recommend mercy, is a purely legislative creation dating from 1911).

12. The jury found that: (1) Mannon was over 62 years old; (2) the murder was committed during the course of a robbery; (3) the murder was committed for pecuniary gain; and (4) Nelson had been previously convicted of a crime of violence. The trial court refused to give independent weight to (2) and (3) due to their similarity, and instead merged them into one factor.

13. Nelson does not argue that the jury's vote affects this Court's review.

14. In *Lawrie v. State,* Del.Supr., 643 A.2d 1336, 1349 (1994), this Court stated "[W]e have concluded in the instant case, on significantly different facts, that there is no constitutional obstacle to the imposition of the death penalty either under the Delaware Constitution or under the United States Constitution." Counsel's claim that Nelson's sentence violates the Eighth Amendment to the United States Constitution, and his reliance on *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), therefore, is misplaced. *Enmund* invalidated as disproportionate a death sentence where the defendant neither participated in the killings nor intended for the victim to be killed. Here, the trial judge found that Nelson actively participated in the murder. He swung a hammer at Mannon and hit him in the back of the head.

mer are merely "pertinent" but are "clearly distinguishable" because of the statutory change. 643 A.2d at 1350. The pre–1991 cases required a unanimous jury verdict to impose the death penalty. In the post–1991 cases, it is the trial judge who has the final responsibility for sentencing, and the jury's recommendation need not be unanimous. As a result, we held that the pre–1991 cases "are not 'similar cases arising under this section' [4209]. Thus, while pertinent, they are not dispositive...." *Id.* Further, we held in *Lawrie* that the particular pre–1991 cases being offered there as pertinent were not "significantly persuasive on the proportionality issue." *Id.*

 Thus, the teaching of *Lawrie* is that this Court must scrutinize the post–1991 cases as the precise universe which is directly applicable to the statutorily-mandated proportionality analysis. While in a given situation a pre–1991 case may be pertinent, and thus may be considered, in the usual case it would not likely be "significantly persuasive." In the instant case, there is no pre–1991 case or post–1991 case which is persuasive in showing that the death penalties here are disproportionate.[15]

Although a "definitive comparison of the universe of cases is almost impossible," this Court has relied upon the factual background of relevant cases to determine the proportionality of a sentence. *Pennell v. State,* Del.Supr., 604 A.2d 1368, 1376–77 (1992). "Most of the persons who have been sentenced to death in Delaware have committed 'an unprovoked, cold-blooded murder of a helpless person (or persons) ... [who lacked] the ability to defend themselves and solely for the purposes of pecuniary gain.'" *Lawrie,* 643 A.2d at 1349 (quoting *Riley v. State,* Del.Supr., 496 A.2d 997, 1027 (1985)); *see also Wright v. State,* Del.Supr., 633 A.2d 329, 343 (1993).

 Usually, deliberation has preceded the murder, though this finding is not necessary where there is intent to harm and the crime committed is heinous. *See Whalen v.*

*State,* Del.Supr., 492 A.2d 552, 564 (1985) (although death penalty not imposed, death penalty is appropriate where defendant broke into home and brutally attacked, raped and strangled occupant). Here, the murder was gruesome, unprovoked, vicious, brutal, unjustified and heinous. "An analysis of [defendant's] 'intentions, expectations, and actions' is appropriate to determine whether [defendant's] level of culpability is sufficient to justify the death penalty under the proportionality analysis." *Lawrie,* 643 A.2d at 1349. Based on Gibbons' testimony, scientific evidence and circumstantial evidence, the jury found that Nelson had swung a hammer and hit 64–year old Mannon in the head, for a few inexpensive items. In our view this case is substantially similar, for proportionality review purposes, to other post–1991 death penalty cases where there were killings committed during the commission of a felony, and the pre–1991 death penalty cases are not inconsistent with this view. *See Lawrie,* 643 A.2d at 1350–51. The death sentence is warranted and is not disproportional.

## IV. CONCLUSION

This Court has painstakingly examined the entire record and has appraised and rejected all claims of error. The death sentence is fair and proportional to previous sentences imposed in similar cases arising under 11 *Del.C.* § 4209. Therefore, the judgment of the Superior Court sentencing Nelson to death for the murder of Wilson Mannon is **AFFIRMED.** This matter is **REMANDED** to Superior Court for further proceedings in accordance with this opinion. This Court's Order of May 13, 1993, staying the execution of Nelson's death sentence shall terminate upon the issuance of this Court's mandate. The Clerk of this Court is directed to cause a copy of this opinion to be hand-delivered forthwith to the attorneys for the parties and two copies to the Commissioner of the Department of Correction, one of which shall be given to Nelson Shelton.

---

15. In *Lawrie,* the appendix included all first degree murder cases which went to a penalty hearing since 1985, but carefully divided those cases between the pre–1991 cases and the post–1991 cases. The appendix to the instant decision includes as the appropriate universe only the post–1991 cases.

## APPENDIX

FIRST DEGREE MURDER CASES THAT WENT TO PENALTY HEARINGS UNDER 11 *DEL.C.* § 4209 AS AMENDED IN 1991 IN 68 DEL.LAWS CH. 189

The following list of cases is a complete restatement of all first degree murder cases decided under 11 *Del.C.* § 4209 as amended in 1991 by 68 Del.Laws Ch. 189, that have gone to a penalty hearing. It incorporates and supersedes the appendices in our decisions in *Lawrie v. State*, Del.Supr., 643 A.2d 1336, 1352–56 (1994); *Ferguson v. State*, Del. Supr., 642 A.2d 772 (1994); *Gattis v. State*, Del.Supr., 637 A.2d 808 (1994); *Dawson v. State*, Del.Supr., 637 A.2d 57 (1994); *Sullivan v. State*, Del.Supr., 636 A.2d 931 (1994); *Wright v. State*, Del.Supr., 633 A.2d 329 (1993); *Red Dog v. State*, Del.Supr., 616 A.2d 298 (1992); *Pennell v. State*, Del.Supr., Del. Supr., 604 A.2d 1368 (1992); *Dawson v. State*, Del.Supr., 581 A.2d 1078 (1990). Cases in which an appeal from the imposition of a sentence of death is pending are designated with a diamond (◊).

Cases Decided Under 11 *Del.C.* § 4209
As Amended in 1991 by 68 Del.Laws Ch. 189

Case Name: Meri–Ya C. Baker
Case No.: IN90–12–1039, 1040
County: New Castle
Sentence: Life Imprisonment

Case Name: Charles M. Cohen
Case No.: IN90–02–0474 thru 0477
County: New Castle
Sentence: Life Imprisonment

Case Name: David F. Dawson
Case No.: IK86–0024; IK87–01–0841; 0843, 0845
County: New Castle (venue changed)
Sentence: Death

Case Name: Byron S. Dickerson
Case No.: IN90–12–1041, 1042
County: New Castle
Sentence: Life Imprisonment

Case Name: Cornelius E. Ferguson
Case No.: IN91–10–0576, 0578 thru 0581
County: New Castle
Sentence: Death

Case Name: Robert A. Gattis
Case No.: IN90–05–1017 thru 1019, 1106, 1107
County: New Castle
Sentence: Death

Case Name: Arthur Govan
Case No.: 92–01–0166
County: New Castle
Sentence: Life Imprisonment

| Case Name: | Robert W. Jackson, III |
|---|---|
| Case No.: | IN–92–04–1222 thru 1227; IN92–04–1348 and 1349 |
| County: | New Castle |
| Sentence: | New penalty hearing scheduled |

| Case Name: | David J. Lawrie |
|---|---|
| Case No.: | IK92–08–0179 thru 0185; IK92–09–0148 and 0149 |
| County: | Kent |
| Sentence: | Death |

| Case Name: | Frank W. Moore, Jr. |
|---|---|
| Case No.: | 92–09–0001, 0002, 1001, 2001, 3001 |
| County: | Sussex |
| Sentence: | Life Imprisonment |

| Case Name: | Jack F. Outten |
|---|---|
| Case No.: | IN92–01–1144 and 1145 |
| County: | New Castle |
| Sentence: | Death |

| Case Name: | James W. Perez |
|---|---|
| Case No.: | IN93–02–1191 and 1197 |
| County: | New Castle |
| Sentence: | Life Imprisonment |

| Case Name: | James Allen Red Dog |
|---|---|
| Case No.: | IN91–02–1495 to 1503 |
| County: | New Castle |
| Sentence: | Death |

| Case Name: | Jose Rodriguez |
|---|---|
| Case No.: | IN93–020–1121 |
| County: | New Castle |
| Sentence: | Life Imprisonment |

| Case Name: | Reginald N. Sanders |
|---|---|
| Case No.: | IK86–03–0898, 0899 and 0903 |
| County: | New Castle (venue changed) |
| Sentence: | Life Imprisonment |

| Case Name: | Nelson W. Shelton ◇ |
|---|---|
| Case No.: | IN92–01–1154 and 1155 |
| County: | New Castle |
| Sentence: | Death—Present appeal |

| Case Name: | Steven W. Shelton |
|---|---|
| Case No.: | IN92–01–1149 and 1150 |
| County: | New Castle |
| Sentence: | Death |

| Case Name: | Donald J. Simmons |
|---|---|
| Case No.: | IN92–01–0770 thru 0772; IN92–01–1140 and 1141 |
| County: | New Castle |
| Sentence: | Life Imprisonment |

Case Name: Willie G. Sullivan
Case No.: IK–01–0192 thru 9196; IK92–02–0001; IK92–03–0022
County: Kent
Sentence: Death

Case Name: Charles H. Trowbridge
Case No.: IK91–07–0175; IK91–09–0032 thru 0034
County: Kent
Sentence: Life Imprisonment

Case Name: John E. Watson
Case No.: IN91–09–0020 thru 0025
County: New Castle
Sentence: Life Imprisonment

Case Name: Dwayne Weeks ◇
Case No.: 92–01–0167
County: New Castle
Sentence: Death—automatic appeal pending

Case Name: Roy R. Williamson
Case No.: S93–05–0249 thru 0255 and S93–05–1249 and 2249
County: Sussex
Sentence: Life Imprisonment

Case Name: Jermaine M. Wright
Case No.: IN91–04–1047 thru 1953
County: New Castle
Sentence: New Penalty hearing Scheduled